Wm. Penn Parking Garage, Inc., Alco Parking Corporation, Campus Parking, Inc., Fourth Avenue Parking, Inc., Grant Parking, Inc., Harry W. Sheppard, Jr., t/a Stanwix Auto Park, John Stabile, and John Stabile, Jr., t/a Wm. Penn Parking Lot, Meyers Bros. Parking-Central Corp., Parking Service Corporation, Inc., et al., Appellants, *v.* City of Pittsburgh, Appellee.

Argued November 7, 1973, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Leonard Boreman,* with him *Richard H. Martin* and *Baskin, Boreman, Wilner, Sachs, Gondelman & Craig,* for appellants.

*Ralph Lynch, Jr.,* City Solicitor, with him *Grace S. Harris,* Special Assistant City Solicitor, for appellee.

OPINION BY JUDGE ROGERS, January 16, 1974:

We are again confronted with issues arising out of the City of Pittsburgh's effort to obtain public revenue from persons who must find places to park motor vehicles or from persons who, for a price, would provide such accommodations- or on account of the transaction whereby the one obtains and the other supplies that tiny sanctuary from the hated parking ticket and the dreaded municipal tow truck.

After our decision in *Alco Parking Corporation v. Pittsburgh,* 6 Pa. Commonwealth Ct. 433, 291 A. 2d 556 (1972), upholding but questioning the reasonableness of Ordinance No. 704 which imposed a tax of 20

per cent on the gross receipts of all commercial parking transactions, and before we were reversed and the ordinance struck down by our Supreme Court in *Alco Parking Corporation v. Pittsburgh*, 453 Pa. 245, 307 A. 2d 851 (1973), City Council adopted Ordinance No. 30 of 1973 which imposes "upon each parking transaction by a patron of a nonresidential parking place at the rate of 20 per centum (20%) on the consideration for each such transaction. . . ." The City by taxing the patron sought to cure in advance the infirmity of confiscation of the operators' property found by the Supreme Court to be suffered by Ordinance No. 704. The instant case is an attack on Ordinance No. 30 by some of the commercial operators who were plaintiffs in the *Alco* case, *supra*, joined by 55 individuals. The form of action is by appeal pursuant to section 6 of The Local Tax Enabling Act, Act of Dec. 31, 1965, P. L. 1257, 53 P.S. §6906, which provides in pertinent part:

"No tax levied for the first time by any political subdivision to which this act applies shall go into effect until thirty days from the time of the adoption of the ordinance or resolution levying the tax. Within said thirty days, taxpayers representing twenty-five percent or more of the total valuation of real estate in the political subdivision as assessed for taxation purposes, or taxpayers of the political subdivision not less than twenty-five in number aggrieved by the ordinance or resolution shall have the right to appeal therefrom to the court of quarter sessions of the county upon giving bond with sufficient security in the amount of five hundred dollars ($500), approved by the court, to prosecute the appeal with effect and for the payment of costs. The petition shall set forth the objections to the tax and the facts in support of such objections, and shall be accompanied by the affidavit of at least five of the petitioners that the averments of the petition

are true and the petition is not filed for the purpose of delay.

. . . .

"It shall be the duty of the court to declare the ordinance and the tax imposed thereby to be valid unless it concludes that the ordinance is unlawful or finds that the tax imposed is excessive or unreasonable; but the court shall not interfere with the reasonable discretion of the legislative body in selecting the subjects or fixing the rates of the tax. The court may declare invalid all or any portion of the ordinance or of the tax imposed or may reduce the rates of tax."

The petitioners' objections are that the tax imposed by Ordinance No. 30 is confiscatory because it prevents the operator-petitioners from making a profit, that it discriminates against the operator-petitioners in favor of the Public Parking Authority of Pittsburgh[1] and that it is excessive, unreasonable and unconscionable. Except by the denunciatory adjectives last mentioned, the appeal petition fails to disclose the nature of the objections of the individual petitioners or their particular interest in the appeal.

The city filed preliminary objections which included a demurrer on the ground that "the complaint relies for a relief on an unconstitutional delegation of taxing power to the judiciary." The court below sustained the demurrer and dismissed the appellants' petition without evidentiary hearing or leave to amend. We are required to reverse.

---

[1] The Supreme Court majority wrote in *Alco Parking*: "It must be concluded that the unreasonably burdensome 20 per cent gross receipts tax, causing a majority of private operators to operate their businesses at a loss, in the special circumstances of this case, constitutes an unconstitutional taking of private property without due process of law in violation of the Fourteenth Amendment of the United States Constitution." 453 Pa. at 269, 307 A. 2d at 864.

The court's action, we gather from its opinion, was based upon two grounds:

(1) That none of the petitioners appear by their pleading to be taxpayers aggrieved by the ordinance and therefore lack standing; the operators, because the new tax is not imposed on them and because their complaint that the tax will cause them to lose patronage is speculative and remote; the individual petitioners because, even if they complain as patrons of parking facilities required to pay the tax, their interest is no different from that of any other member of the general public and "no one has a right not to be taxed."

(2) That the Legislature has by Section 6 of The Local Tax Enabling Act unconstitutionally delegated legislative power to the judiciary.

We have concluded that the lower court's action in dismissing the petition was error.

The Local Tax Enabling Act was enacted in 1947. Act of June 25, 1947, P. L. 1145.[2] It expressed the Legislature's recognition that real estate levies, almost the only source of revenue theretofore permitted municipal subdivisions, provided an inequitable if not insufficient base for the money which would be necessary to supply the schools, roads, and other public improvements traditionally supplied locally, neglected during four years of war. The Act was also evidence of the realization that values in a more complex and otherwise changed society had to a large extent shifted from real

---

[2] It is recognized that first and second class cities were given wide powers to tax by the so-called Sterling Act. Act of August 5, 1932, [Spec. Sess.] P. L. 45, 53 P.S. §15971. If appellate litigation is an indicator, it seems that Philadelphia made more extensive use of this authority than Pittsburgh. Second Class cities (Pittsburgh only) were included in the 1947 Act and in each of its reenactments including the present Act of 1965. They were not excluded from the Sterling Act until 1961 by the Act of July 26, 1961, P. L. 904, 53 P.S. §15971. There is no provision for taxpayer appeal in the Sterling Act.

estate to other subjects, including commercial transactions of many kinds. While this vast delegation of the taxing power was generally approved as necessary, it was recognized as a new departure in municipal government, as evidenced by its popular name, the "Tax Anything Act". The Legislature, however, chose not to confer this broad power to find and to tax subjects and objects previously beyond the reach of local tax gatherers without also according the taxed a right to judicial review of the wide discretion thus given local officials. Section 6 provides this safeguard.

The court below held that neither parking lot operators who may suffer loss of business nor individual persons who will have to pay the tax are aggrieved taxpayers given the right to appeal by Section 6. We disagree. We must, in determining who the Legislature meant should have the right to complain in this kind of case, "look at the Act as well as the facts." *Committee to Preserve Mill Creek v. Secretary of Health,* 3 Pa. Commonwealth Ct. 200, 206, 281 A. 2d 468, 472 (1971). While, as we have noted, The Local Tax Enabling Act gives municipalities wide discretion to tax, it also prescribes notice and other procedural requirements to the passage of the authorized taxing measures and it imposes limitations on certain specific levies and the general requirement that they must be the product of the exercise of a reasonable discretion and not excessive. Surely the Legislature intended to afford ready access to judicial determination of the regularity of these enactments. If operators of lots are taxpayers of the municipality and if they can prove, as they allege, that the tax, although imposed on their patrons, will cause them loss of income, it seems to us that they have standing to complain by the plain wording of the Section. If the individual petitioners, subjected to the tax, are not taxpayers aggrieved, we cannot conceive of who may be. Finally, the thing ap-

pealed from under Section 6 is a taxing ordinance, not a decision rendered in an adversary proceeding. Case law concerning parties aggrieved entitled to appeal administrative orders is of doubtful precedential value here. See, however, *Denny Building Corporation Appeal*, 387 Pa. 311, 127 A. 2d 724 (1956) in which the Supreme Court held that the owners and occupants of dwelling houses were persons aggrieved and directly affected by the action of administrative officers exempting a builder from compliance with statutory requirements. Assuming, nevertheless, that the Legislature intended that persons invoking Section 6 should have a direct and pecuniary interest in the outcome, the appellants here meet that standard.

The lower court, as noted, held Section 6 unconstitutional as a delegation to the judiciary of legislative power, that is, the power to tax. It discerned this most clearly apparently in the phrase empowering the court "to reduce the rates of tax" upon a finding that a tax is excessive or unreasonable.

The first duty of a Pennsylvania court faced with deciding whether the Act of the General Assembly transgresses constitutional limitations, is to apply fundamental standards to its own deliberations. Some of these are:

(1) "An Act of Assembly will not be declared unconstitutional unless it *clearly, palpably* and *plainly* violates the Constitution." *Daly v. Hemphill,* 411 Pa. 263, 271, 191 A. 2d 835 (1963). (Emphasis original.)

(2) ". . . [E]very presumption is in favor of the constitutionality of acts of the legislative body. . . ." *Glancey v. Casey,* 447 Pa. 77, 88, 288 A. 2d 812 (1972).

(3) "It is a long recognized doctrine that whenever an act of assembly is susceptible of different interpretations . . . it is the duty of a court of justice to give to the act that construction which harmonizes with the constitution, for such is presumed to be the legislative

intent." *Dolan v. Linton's Lunch*, 397 Pa. 114, 124, 152 A. 2d 887 (1959).

(4) "It is axiomatic that he who asks to have a law declared unconstitutional takes upon himself the burden of proving beyond all doubt that it is so." *Hadley's Case*, 336 Pa. 100, 104, 6 A. 2d 874 (1939). Section 6, read in the light of these principles and of the history of the legislation of which it is a part, does not offend Article 2, Section 1 of the Pennsylvania Constitution.[3] Certainly the power to invalidate a taxing measure in whole or in part is not the power to tax. Not only have the courts long exercised this power without thought of violating thereby the separation of powers doctrine, both the Superior and Supreme Courts have reviewed and invalidated taxes in proceedings commenced under Section 3 of the Act of 1947.[4] In *Moon Schools Union School District v. Tiglio*, 183 Pa. Superior Ct. 67, 128 A. 2d 150 (1956), a school district resolution was invalidated in part and sustained in part in an opinion by Judge WOODSIDE specifically invoking and quoting Section 3's grant to the court of power to "declare invalid . . . any portion of the ordinance or of the tax imposed or may reduce the rates of tax." In *Allentown School District Mercantile Tax Case*, 370 Pa. 161, 87 A. 2d 480 (1952), the Supreme Court invalidated a school district taxing resolution in its entirety, the court by Chief Justice BELL citing and quoting Section 3 as the source of its power.

It should be borne in mind that the Legislature has not here empowered the judiciary to review the reason-

---

[3] Providing that "[t]he legislative power . . . shall be vested in a General Assembly."

[4] Section 3 of the 1947 Act as originally enacted and Section 6 of the 1965 Act are identical except that by the latter the court is given the power to "reduce the rates of tax." This phrase was added by the amendatory Act of May 9, 1949, P. L. 898, obviously for the purpose of providing, for the municipal subdivision's convenience, an alternative to outright invalidation.

ableness of its statutes but of the ordinances and resolutions of municipal subdivisions. In the early case of *St. Clair School Board's Appeal,* 74 Pa. 252, 257 (1873), the Supreme Court wrote concerning a school levy: "Even when legislative authority is given to tax for a certain purpose, yet if the tax levied is clearly in excess of the sum required for that purpose, its collection may also be enjoined." In *Ritzman v. Coal Township School Directors,* 317 Pa. 271, 176 A. 447 (1935), a trial court's dismissal of an equity action questioning, *inter alia,* the amount of a school levy, was reversed with a procedendo. In *Pittsburgh & Allegheny Telephone Company v. Braddock Borough,* 43 Pa. Superior Ct. 456 (1910), the court was asked by the Borough to hold an Act empowering Common Pleas Courts to determine disputes as to the reasonableness of the amount of license fees charged utilities by municipal subdivisions unconstitutional as an improper delegation of legislative power to the judiciary. The court said:

"It is further alleged that by this act the legislature has attempted to delegate legislative power to the courts. A study of the act clearly enough shows, we think, that the court, in entering the decree contemplated by the act, in no sense exercises legislative power. It merely ascertains and defines the boundary line which separates the reasonable from the unreasonable. The legislature, whose creature the appellant is, has declared that in the exercise of the police powers delegated to it, it must keep within that boundary line. With that limitation defined, the municipality, keeping within it, has the exclusive right as before to determine the exact amount of license fees which the corporations mentioned in the act must pay. The municipality is but an agency created by the legislature to do its part in maintaining the public policy of the state and accomplishing the ends for which the state itself exists."

Section 6 names Quarter Sessions as the reviewing court. The Courts of Quarter Sessions have been given, accepted and exercised power to review municipal actions upon standards no more exact than that of reasonableness. In *Palmer Township Annexation Case*, 416 Pa. 163, 175, 204 A. 2d 760 (1964), the Supreme Court decided that the delegation to Quarter Sessions to inquire into the propriety of annexation was lawful, writing: "Therefore, we conclude . . . that the power given to the court of quarter sessions . . . is within the traditional, albeit unusual, powers long bestowed upon these courts in Pennsylvania and does not involve an unlawful allocation of legislative power to the judiciary." Other examples which come readily to mind are the fixing by the court of the amount of some tax collectors' bonds by Section 4 of the Local Tax Collection Law, Act of May 25, 1945, P. L. 1050, 72 P.S. §5511.4, and the establishment of new election districts by Section 503 of the Pennsylvania Election Code, Act of June 3, 1937, P. L. 1333, 25 P.S. §2703.

Finally, the power to reduce the rates of taxes, does not, in our view, confer upon the court the power to tax. The intendment of the phrase, construed as required with the purpose of upholding the constitutionality of Section 6, is that the court may express its judgment as to what rate is not excessive (as was done by Judge Woodside in *Moon Township Schools v. Tiglio, supra*), or unreasonable. The ordinance or resolution remains that of the political subdivision which may continue the enforcement of its taxing measure at the reduced rate found to be reasonable by the court or repeal it and look for other sources of revenue. The determination of what is a reasonable rate of tax would be made judicially on the basis of the record. The process might be more complex perhaps, but substantively not more difficult than that employed in deciding, for example, whether a Zoning Hearing Board has abused

its discretion in the grant or denial of a variance or special exception. As Judge WOODSIDE wrote in *Nester's Appeal*, 187 Pa. Superior Ct. 313, 320, 144 A. 2d 623, 627 (1958): "Although, as we have noted, the Constitution prohibits the vesting of legislative power in the judiciary, as well as in the executive branch of the government, the principle of the separation of powers applies with least force and effect to the judiciary, for when courts are said to exercise discretion the reference is always to legal discretion within, not without, the bounds of the law."

We find no inconsistency in our holding in *Alco* that there is no constitutional limitation of the amount of a tax (to which holding our Supreme Court has provided an exception for the circumstance in that case of municipal competition) and our holding here that the Legislature may limit the delegation of its taxing power by the provision of judicial review of the discretion exercised by subdivisions in fixing rates.

As we have earlier noted, the statement in the appeal of the individuals' interest is deficient. The court below believed that an averment of the appeal that the City did not comply with notice requirements was insufficient. These matters are proper subjects for amendment which should be allowed.

Order reversed; the record is remanded for proceedings not inconsistent herewith.