David G. Heisey et al., Appellants *v.* Elizabethtown Area School District, Appellee.

Argued December 16, 1981, before President Judge CRUMLISH, JR. and Judges BLATT, WILLIAMS, JR., CRAIG and MACPHAIL.

*Michael J. Hohenadel,* with him *John P. Hohenadel, Nikolaus, Hohenadel & Greiner,* for appellants.

*Michael W. Babic,* with him *George T. Brubaker, Hartman, Underhill & Brubaker,* for appellee.

OPINION BY JUDGE CRAIG, June 3, 1982:

The appellants seek review of an order of the Court of Common Pleas of Lancaster County upholding a tax imposed by the Elizabethtown Area School District on the privileges of obtaining a building permit and engaging in building construction.[1]

---

[1] The tax involved would assess 1% of the cost of construction for the "erection, alteration, repair, renovation extension or replacement of any Building or Improvement to Real Property."

*The manufacturing exemption*

The appellants argue first that the tax concerned here is invalid because the activity taxed, the building of homes, is a manufacturing process exempted under Section 2(4) of The Local Tax Enabling Act (Act), Act of December 31, 1965, P.L. 1257, *as amended,* 53 P.S. §6902(4), which provides that local authorities shall not have authority—

(4) To levy, assess and collect a tax on goods and articles manufactured in such political subdivision or on the by-products of manufacture . . . or on any privilege, act or transaction related to the business of manufacturing . . . with respect to the goods, articles and products of their own manufacture. . . .

The Act does not define the term "manufacture," but Section 1903(a) of the Statutory Construction Act of 1972, 1 Pa. C. S. §1903(a), requires that words in a statute shall be construed "according to their common and approved usage." Webster's Third New International Dictionary 1378 (1966) defines "manufacture" as

1: something made from raw materials by hand or by machinery . . . 2a: the process or operation of making wares or other materials by hand or by machinery esp. when carried on systematically with division of labor . . . b: a productive industry using mechanical power and machinery . . . 5: the act or process of making, inventing, devising or fashioning: PRODUCTION, CREATION

And our Supreme Court, through numerous decisions, has developed this definition:

The meaning of "manufacturing" has been restated by this court in Philadelphia School District v. Parent Metal Products, Inc., 402 Pa. 361, 364, 167 A.2d 257, 258-59 (1961): " 'Manu-

facturing' as used in a legislative enactment is given its ordinary and general meaning. It consists in the application of labor or skill to material whereby the original article is changed into a new, different and useful article. . . . Whether or not an article is a manufactured product depends upon whether or not it has gone through a substantial transformation in form, qualities and adaptability in use from the original material, so that a new article or creation has emerged. . . . If there is merely a superficial change in the original materials, without any substantial and well signalized transformation in form, qualities and adaptability in use, it is not a new article or new production. . . ."

*Commonwealth v. Deitch Co.*, 449 Pa. 88, 93-94, 295 A.2d 834, 837 (1972) (quoting *Commonwealth v. Berlo Vending Co.*, 415 Pa. 101, 104, 202 A.2d 94, 96 (1964)) (citations omitted).

There has been no judicial determination as to whether or not manufacturing under Section 2(4) of the Act includes the construction of homes, although the building of homes has been held not to be a manufacturing process for purposes of the Capital Stock Tax Act, Act of June 1, 1889, P.L. 420, *as amended*, 72 P.S. §1871-1903. *Commonwealth v. Wark Co.*, 301 Pa. 150, 151 A. 786 (1930). The court there commented that the common usage of the word "manufacture" was not applicable to homes, which are consistently referred to as being "built", "constructed" or "erected". *Id.* at 155-56, 151 A. at 788.

We are not bound by the court's ruling in *Wark*,[2] but we find its reasoning to be persuasive. We agree

_____

[2] The appellants correctly point out that in *Wark* the Court was concerned with an *exemption* from a tax imposed under the Capital Stock Tax Act and that the language of that exemption was to be

that, in common parlance, a home is not said to have been "manufactured" but rather it is "built", "constructed" or "erected",[3] and that the common and accepted definition of "manufacture" does not include the construction of a home. We acknowledge that building a house may involve "the application of labor or skill to material whereby the original article is changed into a new, different and useful article." *Deitch,* 449 Pa. at 93, 295 A.2d at 837. However, to apply the word "manufacture" to the process of erecting a home would require a strained interpretation of that term as it is used in Section 2(4) of the Act.

The legislature did define "manufacture" in Section 201 of the Tax Reform Code of 1971, Act of March 4, 1971, P.L. 6, *as amended,* 72 P.S. §7201, and that definition is consistent with our proposed resolution of the issue here concerned; it provides that manufacture "shall not include construction, altering, servicing, repairing or improving real estate. . . ."

We must conclude, therefore, in light of the language of Section 2(4) of the Act, of our Supreme Court's ruling in *Wark,* of the common usage of the word "manufacture" and of the legislature's definition of that term in Section 201 of the Tax Reform Code, that the General Assembly did not intend to include construction of homes as a manufacturing pro-

construed in favor of the taxing authority. Here we are dealing with a limitation on the School District's taxing authority which would require that " '[a]ny doubt . . . concerning the construction of the . . . [legislation] must be resolved in favor of the taxpayer. . . .' " *Golden Triangle Broadcasting, Inc. v. City of Pittsburgh,* 483 Pa. 525, 534, 397 A.2d 1147, 1151 (1979) (quoting *Fischer v. Pittsburgh,* 383 Pa. 138, 142, 118 A.2d 157, 159 (1955)).

[3] The appellants attempt to undermine the holding of *Wark* by contending that its decision was based purely on semantics. We would note, however, that in deciding what would be the common usage of a word, semantic considerations are the most persuasive and relevant tools available.

cess beyond the taxing authority of the School District under the Local Tax Enabling Act.

## Unreasonableness of the tax

The appellants next assert that this one percent tax is unreasonable and therefore invalid under Section 6 of the Act, 53 P.S. §6906.[4] They rely on the case of *William Penn Parking Garage, Inc. v. City of Pittsburgh*, 464 Pa. 168, 346 A.2d 269 (1975), affirming 11 Pa. Commonwealth Ct. 507, 314 A.2d 322 (1974).

In *William Penn*, the Supreme Court said that, before reaching a conclusion as to unreasonableness, a court "would need to consider any differences . . . suggested by the taxing authority, giving great weight to the judgment of the municipal officials . . . ,'' including among such differences any which might exist "in economic impact of the tax'' and the "relation of other taxes imposed on the class of taxpayers to the cost of services rendered to them. . . .'' 464 Pa. at 217, 346 A.2d at 293.

Considering such matters in the light of the record in this case, we must conclude that this tax is unreasonable.

Clearly, a one percent tax on building permits is a levy imposed primarily upon newcomers to the school district, along with those few present residents who may have new homes built in a particular year. The irrationality of obtaining additional revenue for

---

[4] Section 6 of the Act provides in pertinent part:

It shall be the duty of the court to declare the ordinance and the tax imposed thereby to be valid unless it concludes that the ordinance is unlawful or finds that the tax imposed is excessive or unreasonable; but the court shall not interfere with the reasonable discretion of the legislative body in selecting the subjects or fixing the rates of the tax. The court may declare invalid all or any portion of the ordinance or of the tax imposed or may reduce the rates of tax,

school district operations through such a tax was made clear in the record by the School Superintendent's testimony that this impost was adopted in place of raising the real estate tax millage. Thus, we see that, instead of collecting the needed additional revenue from all property owners, this tax primarily goes after the new homeowners, extracting $500, for example, if a $50,000 home is involved. A few other property owners are taxed only upon alterations, necessarily in less significant dollar amounts, but the majority of property owners, taking out no building permits, contribute nothing to the enlargement of the school revenue.

In *Weber Basin Home Builders Association v. Roy City*, 26 Utah 2d 215, 487 P.2d 866 (1971), a municipal building permit fee of $112 was struck down as an invalid revenue measure (not just as a license fee), even though it had been imposed by the municipality itself. The tax here, greater in amount and imposed for school purposes, is more clearly unlawful.

The *Weber Basin* opinion cogently stated:

It is not to be doubted that each new residence has its effect in increasing the cost of city government; nor that due to the steadily increasing costs of everything . . . , the city would have authority to raise the fees charged for such services from time to time. Nevertheless, in that connection, the new residents are entitled to be treated equally and on the same basis as the old residents.

Similar in principle is the case of Daniels v. Borough of Point Pleasant, [23 N.J. 357, 129 A.2d 265 (1957)] wherein the New Jersey court in striking down the same kind of ordinance, speaking through Chief Justice VANDERBILT, stated:

"What the Borough . . . is attempting to do here is to defray the general cost of government

under the guise of reimbursement for the special services. . . . The philosophy of this ordinance is that the tax rate of the Borough should remain the same *and the new people coming into the municipality should bear the burden of the increased costs* of their presence. This is so totally contrary to tax philosophy as to require it to be stricken down." (Emphasis in orgiinal.)

The record in this case has established the exclusionary impact of this measure against newcomers. Homebuilders testified to an expected reduction of new homes each year, by one or two out of six (Mr. Miller) or by 25% to 50% of housing starts (Mr. Blake).

To approve this tax would give license to school districts and suburban municipalities across the state to create another obstacle against citizens moving into developable communities. Obviously, such a tax is markedly less pertinent to the built-up central cities and towns, having significance chiefly in suburban housing areas available for residential development.

Although the record here evidences no conscious exclusionary intention on the part of the authors of this tax, its effect, despite their proper concern for their schools, undeniably is to exempt most of the present residents from an added tax, while collecting it mostly from families coming into the community. The judicial policy against housing exclusion in this Commonwealth, strongly stated as a matter of substantive due process in *Surrick v. Zoning Hearing Board of Upper Providence Township*, 476 Pa. 182, 382 A.2d 105 (1977) as to land use controls, is violated by the tax before us.

Thus, regardless of lack of intent, the result is the same as in communities where present residents might knowingly take steps to raise the gangplank of entry because they are already aboard.

Therefore, without needing to explore appellant's vagueness attack, we conclude that the tax should be declared invalid.

ORDER

Now, June 3, 1982, the order of the Court of Common Pleas of Lancaster County in the above-captioned case is reversed and the tax in question is determined to be invalid.

President Judge CRUMLISH, JR. concurs in the result only.

Judge MENCER did not participate in the decision in this case.

Judge PALLADINO did not participate in the decision in this case.

———

DISSENTING OPINION BY JUDGE BLATT:

I must respectfully dissent.

I agree with the majority's holding that construction of homes is not "manufacturing" under Section 2(4) of The Local Tax Enabling Act (Act), 53 P.S. §6902(4), but I do not agree with the conclusion that the one percent tax here concerned was unreasonable under *William Penn Parking Garage, Inc. v. City of Pittsburgh*, 464 Pa. 168, 346 A.2d 269 (1975).

Our Supreme Court in *William Penn* outlined the considerations which a court must undertake in determining whether or not a tax is unreasonable under Section 6 of the Act. First, an examination must be made as to the effect of Section 17(a) of the Act, 53 P.S. §6917(a), which establishes a limit on the aggregate amount of all taxes which may be imposed by a political subdivision. Here, however, the appellants have conceded that, when the amount of the tax concerned is combined with the other taxes imposed by the School District, the sum does not exceed the maxi-

mum allowable under Section 17(a). Secondly, consideration must be given to the effect of Section 8 of the Act, 53 P.S. §6908, which sets limits upon certain specified types of taxes. Here, the tax at issue is not specifically listed in Section 8, but we must still consider whether or not the listed taxes are sufficiently similar to the present tax so as to provide an indication of its reasonableness. *William Penn.* Section 8 (5) establishes a one percent ceiling for taxes on the transfer of real property, and I believe that such a tax is so similar to the instant tax (a one percent tax on building construction) as to establish that the School District here did *not* act unreasonably.

That the instant tax would raise obstacles to new residents moving into the community would be equally applicable to a tax on the transfer of real property. Yet the General Assembly has already decided that such a tax is reasonable, if limited to one percent and I can detect no significant difference, therefore, economic or otherwise, between that tax and the one presently before us.

I would therefore hold this tax to be reasonable.

Judge MacPhail joins in this dissent.

---

Dissenting Opinion by Judge MacPhail:

I respectfully dissent.

In the absence of a gross abuse of discretion on the part of the municipal officials involved who are in the best position to balance the necessity of raising additional revenue against the adverse impact of the proposed tax, I believe we should affirm the action of the school board in imposing this tax whether or not we, as a Court, may be of the opinion that the tax is unreasonable. The impact of the tax in the instant case is not unlike that which we approved in *Smith v. Southern York County School District,* 44 Pa. Com-

monwealth Ct. 227, 403 A.2d 1034 (1979), *petition for allowance of appeal denied,* December 10, 1979.

I would affirm the judgment of the Court of Common Pleas of Lancaster County.