McCORD, CONDRON AND McDONALD, INCORPORATED, Appellant

v.

TWIN CITY FIRE INSURANCE COMPANY, Appellee.

No. 18314.

Court of Civil Appeals of Texas, Fort Worth.

Nov. 13, 1980.

Rehearing Denied Dec. 11, 1980.

Weir & Steinberger and William P. Weir, Fort Worth, for appellant.

Garrett, Settle & Callaway, and Rufus S. Garrett, Jr., Fort Worth, for appellee.

OPINION

HUGHES, Justice.

McCord, Condron and McDonald, Incorporated have appealed from the take nothing judgment of the trial court which denied recovery under a casualty insurance policy issued by Twin City Fire Insurance Company.

We affirm.

The trial was to a jury (which was dismissed by agreement at close of testimony.)

The parties submitted the matter to the trial judge to determine the facts and the law involved.

The parties agreed and stipulated to the amount of damages (contingent on a recovery by appellants.) We are concerned with only one Point of Error. Did the trial court err in granting judgment for Appellee because the loss suffered by Appellant was not excluded under the terms of the policy?

■ No findings of fact and conclusions of law were filed although Appellant made a tardy application for same. We imply, therefore, findings by the trial court against every issue the Appellant was obliged to establish. *Roever v. Delaney*, 589 S.W.2d 180 (Tex.Civ.App.–Fort Worth, 1979 no writ), *Buchanan v. Byrd*, 519 S.W.2d 841 (Tex.1975).

Appellant's fact statements in his brief are admitted to be correct except that Appellee characterized the judgment as one "that the policy did not cover the loss sought by appellant," when, in fact it was a take nothing judgment.

The facts were not disputed.

Appellant was awarded a contract to build a junior high school building for the Arlington Independent School District. He subcontracted the steel erection to another. While the subcontractor was setting a precast tee on the cafetorium of the new building disaster struck! Something caused the tee and other tees and beams previously set by the subcontractor to fall and damage walls of the building and door frames stored on the ground (as well as the tees and beams themselves.) Before the accident the School District had paid Appellant for the exterior walls, door frames, beams and for all but three of the tees.

Appellant notified Appellee of the loss under its insurance policy. Appellee denied liability, alleging the loss to be excluded by terms of the policy.

Appellant contends "that the property which was damaged, that is, the door frames on the ground, the exterior and interior walls which had been erected, and the beams and all but three of the tees which had been set, was property belonging to the Arlington Independent School District and that therefore, such property is not excluded from policy coverage."

Appellant also urges that the "Broad Form Property Damage Endorsement" of the policy requires a narrower and stricter interpretation of the "care, custody and control" provision. Appellant avers that the damaged property of the school was not in the care, custody and control of Appellant (i. e., floors, walls, etc.) in that "(1) the damaged property owned by the school district was not under the immediate supervision of Appellant and was not a necessary element of the work involved; "(2) the damaged property was not in the actual physical control of Appellant;" and "(3) the damaged property was not in the actual (custody) of Appellant;" that therefore, the damaged property was not excluded from coverage.

Policy exclusions "(i)" and "(m)" recite in pertinent part:

"(i) to *property damage* to

"(1) property owned or occupied by or rented to the *insured.*

"(2) the property used by the *insured*, or

"(3) property in the care, custody or control of the *insured*, or as to which the *insured* is for any purpose exercising physical control;

"but parts (2) and (3) of this exclusion do not apply with respect to liability under a written sidetrack agreement and part (3) of this exclusion does not apply with respect to *property damage* (other than to *elevators*) arising out of the use of an *elevator* at premises owned by, rented to or controlled by the *named insured* ;"

"(m) to *property damage* to work performed by or on behalf of the *named insured* arising out of the

work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith;"

The Broad Form Endorsement recites "(y)" as follows:

"(y) to *property damage*

"(1) to property owned or occupied by or rented to the *insured*, or, except with respect to the use of elevators, to property held by the *insured*, for sale or entrusted to the *insured* for storage or safekeeping,

"(2) except with respect to liability under a written sidetrack agreement or the use of elevators to

"(a) property while on premises owned by or rented to the *insured* for the purpose of having operations performed on such property by or on behalf of the *insured*,

"(b) tools or equipment while being used by the *insured* in performing his operations;

"(c) property in the custody of the *insured* which is to be installed, erected or used in construction by the *insured*.

"(d) that particular part of any property, not on premises owned by or rented to the *insured*,

"(i) upon which operations are being performed by or on behalf of the *insured* at the time of the *property damage* arising out of such operations, or

"(ii) out of which any *property damage* arises, or

"(iii) the restoration, repair or replacement of which has been made or is necessary by reason of faulty workmanship thereon or on behalf of the insured . . . ."

(Emphasis supplied).

Appellant, by Admission No. 1, admitted that it was performing operations on the school building at the time of the occurrence. By Admission No. 13 Appellant admitted that the building damaged by the occurrence was a product of work performed partly by Appellant and partly by subcontractors on behalf of Appellant. By answers to Interrogatories 2, 4, 5 and 6 was admitted that all the items damaged in the school building were constructed by Appellants.

By answer to Interrogatory No. 12, Appellant admitted it was performing general supervision required by the contracts. By answer to Interrogatory No. 15 was an admission that the door frames were to be installed by Appellant. By answer to Interrogatory No. 18, Appellant admitted its workmanship on the columns in question was defective and by answer to Interrogatory No. 19, Appellant admitted such defective workmanship was a proximate cause of the damages claimed.

■ Appellant had the duty to show the loss here was due only to a peril covered by the policy and to show the exclusions did not apply. *Travelers Idemnity v. McKillip*, 469 S.W.2d 160 (Tex.1971). We agree with Appellee that the Appellant did not discharge the duty.

■ It is apparent from the record that Appellant was in possession of and occupied the building until the general contract was completed. (Otherwise, how could it effectively carry out its contractual obligations to build and complete such building?) There was no evidence that Appellant "turned over" the partly completed building to the School District. We think the language in *Eulich v. Home Indemnity Company*, 503 S.W.2d 846 (Tex.Civ.App.–Dallas, 1973 writ ref'd n. r. e.) applies to this present case where it says of the policy there: "It does not insure the contractor against his own failure to perform his contract, but does insure him against liability for damages other than to the building itself as the result of his performance, whether defective or otherwise."

*Employers Casualty Company v. Brown–McKee, Inc.*, 430 S.W.2d 21 (Tex.Civ.App.–Tyler 1968, writ ref'd n. r. e.) was cited by Appellant in support of its position. We hold it to do the opposite. In *Brown–*

*McKee* it was held that liability was excluded where damages to the building involved resulted from use of an inadequate steel member that did not comply with specifications. The court there said that it was exactly the type of liability which the quoted language was intended to exclude.

We have examined all of Appellee's cross–points, but find it unnecessary, in view of our disposition of Point of Error No. 1, to pass upon them.

Affirmed.