**MID–UNITED CONTRACTORS, INC., Appellant,**

v.

**PROVIDENCE LLOYDS INSURANCE COMPANY, Appellee.**

**No. 2–87–146–CV.**

Court of Appeals of Texas, Fort Worth.

July 21, 1988.

Rehearing Denied Aug. 25, 1988.

Reynolds Shannon Miller Blinn White & Cook, John H. Hudson, III and Tim G. Sralla, Fort Worth, for appellant.

Gwinn & Roby, John K. Dunlap, Dallas, for appellee.

Before BURDOCK, HILL and FARRIS, JJ.

OPINION

FARRIS, Justice.

This is the appeal of a summary judgment in which the trial court ruled that an insurer, the appellee, had no duty under its comprehensive general liability policy to de-

fend its insured, the appellant, in a separate suit brought against the appellant by a third party, Trail Creek. In its pleadings, Trail Creek had alleged a cause of action against appellant for damages resulting from defects in an office building that appellant, as general contractor, had constructed for Trail Creek. The issue before us is whether the broad form comprehensive general liability endorsement (endorsement) to its comprehensive general liability insurance policy created a duty on the part of appellee to defend appellant, which duty would not have existed under the basic policy, absent the endorsement.

We reverse and render because we find that the language of the endorsement, by replacing exclusions in the basic policy with more restricted exclusions, extended the policy coverage to cover liability for certain property damage claims not covered under the basic policy; therefore, appellee was obliged to defend appellant in the Trail Creek suit.

Appellant and appellee stipulated the facts, and both parties moved for summary judgment. In summary, the stipulation of facts provided that appellee had issued two comprehensive general liability insurance policies to appellant. The parties agree that the policies provided identical coverage, except for their effective dates, with the second policy replacing, and in effect, extending the coverage of the first. The parties also stipulated that appellant had been named as a defendant in the suit brought by Trail Creek, that appellant made a demand that appellee defend appellant in the third party cause of action, and that the appellee refused to defend appellant relying upon exclusions contained in the policies. Attached as exhibits to the stipulation of facts were the two policies of insurance and Trail Creek's most recent pleadings in its suit against the appellant.

Trail Creek's pleadings alleged that it entered into a contract with appellant for the construction of a professional building, and after completion and acceptance of the building, a number of defects were discovered. Trail Creek alleged alternative theories of damages including violation of the Deceptive Trade Practices Act, negligence, and breach of contract. Appellant was alleged to have been negligent in a number of ways, in failing to adequately design and install various parts of the building, in failing to properly inspect the building prior to its certification that the building was completed, and in failing to adequately supervise construction. Trail Creek also alleged that Mid–United performed a substantial portion of the contract through various subcontractors.

Appellant's argument in its first and second points of error may be summarized as follows. Whether appellee had a duty to defend appellant must be determined from pleadings of the underlying lawsuit. In the underlying lawsuit, Trail Creek alleged a number of alternative theories including an allegation that its injuries resulted from wrongdoing by appellant's subcontractors. Although the basic comprehensive general liability policy would not provide coverage for property damage caused by the acts of a subcontractor, the endorsement replaced some of the exclusions contained in the basic policy and extended coverage to property damage resulting from the actions of subcontractors.

Appellee's argument may be briefly summarized thusly: the endorsement made no substantive change in the coverage applicable to the facts of this case, and under the applicable exclusions, appellee has no liability for the occurrence which is the basis of Trail Creek's suit and no obligation to defend appellant in the suit filed by Trail Creek.

It was appellee's obligation to plead those policy exclusions upon which it relied. *See* TEX.R.CIV.P. 94. Appellee pleaded exclusions (n) and (o) of the basic policy and paragraph VI of the endorsement. By the express language of the endorsement, exclusion (o) was replaced by paragraph VI. Therefore, we will only consider if either exclusion (n) or the exclusions contained in paragraph VI of the endorsement preclude any duty of appellee to defend appellant from the Trail Creek suit.

Policy Exclusion (n)

■ Policy exclusion (n) provides that the insurance does not apply "to property damage to the named insured's products arising out of such products or any part of such products." Appellee contends that the building constructed by appellant for Trail Creek was appellant's product. Appellant argues that as a general contractor, it was providing Trail Creek with a service rather than selling it a product. We hold that exclusion (n) is not applicable to the facts of this case because neither the building nor its component parts were the appellant's product.

A "named insured's products" is defined in the policy to mean the "goods or products manufactured, sold, handled or distributed by the named insured or by others trading under his name...." Both appellant and appellee have cited opinions of courts of other states which have dealt with the question of whether the term "product," contained in comprehensive general liability policies, includes or excludes a building constructed by the insured. The cited authorities are divided on this issue, and we find none of them persuasive. We hold that exclusion (n), applicable to the insured's products, does not apply to the construction of the building because in ordinary language buildings are constructed or erected, not manufactured, and because any ambiguity in the policy language must be construed against the insurer and in favor of the insured.

We are unable to find any Texas authority which defines either product or the process of manufacturing a product to include or exclude either a building or its construction by the builder. As stated above, the courts of other states have split in attempting to construe these terms in connection with similar policies of insurance. We are persuaded by the common sense logic which recognizes that "in common parlance, a [building] is not said to have been 'manufactured' but rather it is 'built', 'constructed' or 'erected'...." *See Heisey v. Elizabethtown Area School Dist.,* 67 Pa. Cmwlth. 27, 445 A.2d 1344, 1346 (1982); *see also Morley v. E.E. Barber Construction*

*Co.,* 220 Ark. 485, 248 S.W.2d 689, 692 (1952).

The laws of this state reflect the distinction, and common usage, between improvements of realty which are constructed or erected and the process of manufacturing. TEX.REV.CIV.STAT.ANN. art. 249a (Vernon 1973), regulating the practice of architecture, refers to the construction and erection of buildings, and TEX.CIV.PRAC. & REM.CODE ANN. sec. 130.001 (Vernon Supp.1988) defines a construction contract as a contract or agreement "concerning the construction, alteration, repair, or maintenance of a building, structure, appurtenance, road, highway, bridge, dam, levee, or other improvement to or on real property...."

Our Supreme Court has commonly referred to the construction of buildings rather than to their manufacture. *See Evans v. J. Stiles, Inc.,* 689 S.W.2d 399 (Tex.1985); *Karl and Kelly Co., Inc. v. McLerran,* 646 S.W.2d 174 (Tex.1983); *Gupta v. Ritter Homes, Inc.,* 646 S.W.2d 168 (Tex.1983); *Humber v. Morton,* 426 S.W.2d 554 (Tex. 1968).

Finally, more than one hundred years ago, the Supreme Court of the United States in a case involving a contract to "erect a bridge" recognized the distinction between a manufacturer and a party to the litigation who "made or constructed" the "false work" or scaffolding of a railroad bridge. *Kellogg Bridge Co. v. Hamilton,* 110 U.S. 108, 3 S.Ct. 537, 538–39, 28 L.Ed. 86 (1884).

■ Appellant urges a construction of "named insured's product" which is not unreasonable. Policy language which is susceptible of more than one reasonable construction is patently ambiguous, and where policy language, chosen by the insurer, is susceptible of more than one construction, it must be construed strictly against the insurer and liberally in favor of the insured. *See Barnett v. Aetna Life Ins. Co.,* 723 S.W.2d 663, 666 (Tex.1987). We must adopt the construction of an exclusion clause urged by the insured as long as that construction is not itself unreasonable, even if the construction urged by the

insurer appears to be more reasonable or a more accurate reflection of the parties' intent. *Glover v. National Ins. Underwriters,* 545 S.W.2d 755, 761 (Tex.1977). Because we find that, at a minimum, the construction urged by appellant is as reasonable and as accurate a reflection of the parties' intent as that urged by appellee, we hold that the definition of the named insured's product does not include a building constructed or erected by the insured and that exclusion (n) is not applicable to the facts of this case.

### Endorsement Paragraph VI

Paragraph VI of the endorsement reads, in relevant part, as follows:

VI. BROAD FORM PROPERTY DAMAGE LIABILITY COVERAGE (Including Completed Operations)

The insurance for property damage liability applies, subject to the following additional provisions:

(A) Exclusions (k) and (o) are replaced by the following:

. . . .

(2) except with respect to liability under a written sidetrack agreement or the use of elevators

. . . .

(d) to that *particular part* of any property not on premises owned by or rented to the insured. [Emphasis added.]

. . . .

(iii) the restoration, repair or replacement of which has been made or is necessary *by reason of faulty workmanship thereon* by or on behalf of the insured: [Emphasis added.]

. . . .

(3) with respect to the completed operations hazard and with respect to any classification stated in the policy or in the company's manual as "including completed operations" to property damage to work performed by the named insured arising out of such work or any portion thereof, or out of such materials, parts or equipment furnished in connection therewith.

(B) The Broad Form Property Damage Liability Coverage shall be excess insurance over any valid and collectible property insurance (including any deductible portion thereof) available to the insured, such as, but not limited to, Fire, Extended Coverage, Builder's Risk Coverage or Installation Risk Coverage and the Other Insurance Condition of the policy is amended accordingly.

The broad form property damage endorsement replaces exclusion (k),[1] the care, custody and control exclusion, and exclusion (o),[2] the workmanship exclusion, and is more narrow in scope than the exclusions it replaces. The endorsement narrows the application of the two exclusions to the particular part of the property with which the insured or its subcontractor had contact in causing the loss. Under the more restrictive language of the endorsement, the insured is protected by the endorsement's completed operation coverage when the insured is legally liable for property damage to the work of a subcontractor, to the work of the insured or other subcontractors arising from the work of a subcontractor of the insured. In other words, although appellant would have no insurance coverage for damage to its work or arising out of its work, appellant was covered for damage to its work arising out of a subcontractor's work. By contrast, absent the endorsement, under exclusions (k) and (o), any property damage to work completed by appellant or on behalf of appellant by its subcontractors would be excluded.

■ By applying our interpretation of the endorsement to a part of the factual

---

1. (k) to property damage to
   (1) property owned or occupied by or rented to the insured,
   (2) property used by the insured, or
   (3) property in the care, custody or control of the insured or as to which the insured is for any purpose exercising physical control; ...

2. (o) to property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith; ...

allegations pleaded by Trail Creek, we can demonstrate the endorsement's extended coverage and the extent of its exclusions. Trail Creek alleged that prefabricated brick panels were improperly installed with inadequate flashing and weepholes resulting in moisture getting in behind the walls and rusting steel reinforcing rods which, in turn, caused rows of supporting brick to crack throughout the building. Under the endorsement exclusion set out in VI(A)(3), appellee would have no liability for either the damage to the brick panels, the steel reinforcing rods or the supporting brick if the improper installation was work performed by appellant. However, if the installation was performed by a subcontractor then appellee would be liable for the damage to the steel rods and the supporting brick but would not be liable for damage to the prefabricated brick panels which are "that *particular part* of ... property the restoration, repair or replacement of which has been made or is necessary *by reason of faulty workmanship thereon*" excluded under VI(A)(2)(d)(iii). [Emphasis added.]

There are two Texas cases involving policies containing language similar to paragraph VI: *Dorchester Development v. Safeco Ins.*, 737 S.W.2d 380 (Tex.App.—Dallas 1987, no writ); *McCord, Condron & McDonald v. Twin City Fire Ins.*, 607 S.W.2d 956 (Tex.Civ.App.—Fort Worth 1980, writ ref'd n.r.e.). Both can be distinguished from the instant case.

The *Dorchester* case like the instant case involved an underlying lawsuit brought against the insured, Dorchester, by the owner of property on which Dorchester had constructed an apartment complex. Dorchester had demanded Safeco, its insurer, defend it in the property owner suit pursuant to an insurance policy. Safeco refused to defend Dorchester, and Dorchester settled with the property owner demanding of Safeco reimbursement for its cost of defense as well as the cost of settling. In the reported case, summary judgment was rendered in favor of Safeco holding that Safeco owed no duty to Dorchester under the policy with regard to the property owner's suit. In its motion for summary judgment,

Safeco had relied upon policy language similar to that contained in paragraph VI(A)(2)(d)(iii) of the policy in the instant case. Despite the similarity of policy language and of the general facts involved, particular facts cited in the *Dorchester* opinion distinguish it from the instant case. The underlying lawsuit of the property owner against *Dorchester* did not involve a complaint that any other property was damaged as a result of the insured's defective workmanship. *Dorchester*, 737 S.W.2d at 382. As pointed out in *Dorchester*, if the defective work performed by or on behalf of the insured caused damage to other work of the insured which was not defective, there would have been coverage for repair, replacement or restoration of the work which was not defective. *See id.*

Although the policy in *McCord* also included an exclusion similar to that contained in the endorsement paragraph VI of the instant case, the cases can be distinguished because *McCord* involved the determination that an exclusion (i), identical to that of exclusion (k) of the instant policy, precluded liability on the part of the insured. *McCord*, 607 S.W.2d at 957–58. As noted above, in the instant case, paragraph VI replaced exclusion (k).

■ An insurer's duty to defend its insured is determined by allegations of the petition against the insured. *See Argonaut Southwest Insurance Company v. Maupin*, 500 S.W.2d 633, 635 (Tex.1973). Because we find that Trail Creek alleged, in part, facts which if true would be covered under the appellee's policy of insurance, we hold that the appellee has a duty to defend appellant in the Trail Creek suit and we sustain appellant's first and second points of error.

Appellant's third point of error complains that the trial court erred in granting summary judgment denying it judgment for attorneys' fees against appellee. Because there is no evidence of attorneys' fees within the record and because the issue of attorneys' fees is not addressed in the parties' stipulation, we find that appellant has failed to meet its burden of proof on this

issue and overrule appellant's third point of error.

The judgment of the trial court is reversed and judgment rendered in accordance with this opinion.