**GAR–TEX CONSTRUCTION COMPANY, Appellant,**

v.

**EMPLOYERS CASUALTY COMPANY, Appellee.**

**No. 05–88–00657–CV.**

Court of Appeals of Texas, Dallas.

May 15, 1989.

Rehearing Denied June 26, 1989.

Steven E. Clark, Leland C. de la Garza, Dallas, for appellant.

Randy A. Nelson, Beth D. Bradley, Dallas, for appellee.

Before HOWELL, LAGARDE and WHITTINGTON, JJ.

LAGARDE, Justice.

Gar–Tex Construction Company (Gar–Tex) appeals a summary judgment rendered in favor of the defendant, Employers Casualty Company (Employers) denying Gar–Tex's insurance claim under a liability insurance policy issued to Gar–Tex by Employers. In three points of error, Gar–Tex contends that the trial court erred: (1) in granting Employers' motion for summary judgment because Gar–Tex was entitled to judgment as a matter of law; (2) in denying Gar–Tex's motion for summary judgment because Gar–Tex was entitled to judgment as a matter of law; and (3) in granting Employers' motion for summary judgment because genuine issues of material fact existed. We disagree and affirm.

On October 14, 1985, the City of Ennis entered into a contract with Red River Construction Company for construction of an addition to the Ennis Water Treatment Plant, which was to include construction of a clearwell (an underground, concrete water storage tank). The contract included plans and specifications designed by Black & Veatch Engineers and Architects. On October 16, 1985, Red River entered into a subcontract with Gar–Tex pursuant to which Gar–Tex was to provide labor and equipment for the construction of the clearwell. Gar–Tex's responsibilities included the construction of the concrete slab, walls, and ceiling for the clearwell, and the formulation of methods to prevent water damage to the clearwell during its construction. The potential for water damage, including the possibility of the structure "floating," was specifically mentioned in the job specifications which were prepared by Black & Veatch. Thus, Gar–Tex implemented the following precautionary measures to prevent water damage: (1) a cofferdam was built around two sides of the clearwell excavation site to divert surface flow away from the site; (2) the clearwell was partially backfilled; and (3) two electrically powered water pumps were placed in the excavation site to remove any excess water.

During the weekend of May 24–25, 1986, significant rainfall resulted in surface runoff, and the runoff entered the clearwell excavation site. Although there is a question of fact regarding whether the electricity was off for an extended period of time, thereby rendering the pumps inoperable, it is clear from the record that the pumps failed to keep the excavation site dry, and sufficient runoff accumulated in the excavation site to cause the clearwell to float, resulting in structural damage. Thereafter, Red River requested that Gar–Tex repair the water damage to the clearwell and complete its construction. Gar–Tex repaired the damage at a cost of $50,789.49. Prior to making the repairs, Gar–Tex notified Employers of the damage. Employers inspected the damaged structure and determined that the loss was not covered by the policy. Employers notified Gar–Tex in writing that the loss was not covered and explained that it denied coverage because the damage was to Gar–Tex's work product and because the damage arose out of Gar–Tex's own actions.

On February 11, 1987, Gar–Tex filed suit against Employers for recovery under the terms of the policy. Gar–Tex first moved for partial summary judgment on December 29, 1987, requesting an interpretation and declaration as to the terms of the policy and its effect on the burden of proof. The court, by order dated February 4, 1988, denied Gar–Tex's motion. Subsequently, Employers filed its motion for summary judgment. The trial court agreed to consider Employers' motion and to reconsider Gar–Tex's motion for partial summary judgment. On March 30, 1988, the trial court heard the motions and arguments of the respective parties and, on April 8, 1988, granted Employers' motion and denied Gar–Tex's motion.

With these facts in mind, we address Gar–Tex's first two points of error. In those points, specifically contending that

its loss was a covered risk, Gar–Tex claims that it is entitled to judgment as a matter of law. Gar–Tex argues that the water damage to the clearwell was caused by an "accident" or "act of God" and was neither expected nor intended. *See American Cas. Co. v. Timmons*, 352 F.2d 563, 565–66 (6th Cir.1965). Gar–Tex concedes that it was legally obligated to make the clearwell repairs and recognizes that it would otherwise be in breach of its subcontract. Gar–Tex asserts that by breaching its subcontract, it would then be exposed to a suit by Red River for the cost of the repairs, regardless of whether Gar–Tex was at fault in causing the damage. Thus, Gar–Tex maintains that the broad form policy and the endorsement to the policy are designed to protect Gar–Tex from this type of damage which results from fortuitous losses occurring in connection with its work. *See Ohio Cas. Ins. Co. v. Terrace Enter., Inc.*, 260 N.W.2d 450, 452 (Minn.1977). We disagree.

It is undisputed that the comprehensive general liability insurance policy (broad form policy) issued by Employers to Gar–Tex was in force at the time the loss occurred. The broad form policy provides:

> The company [Employers] will pay on behalf of the insured [Gar–Tex] *all sums which the insured shall become legally obligated to pay as damages* because of
>> Coverage A. bodily injury or
>> Coverage B. property damage
> to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage....

(Emphasis added.)

The next section in the broad form policy is entitled "Exclusions." Section VI of the endorsement[1] to the broad form policy replaces two of the subsections under the Exclusions. The Exclusion section and the endorsement, when read together, state, in pertinent part:

> Exclusions
> This insurance does not apply:
>
> \* \* \* \* \* \*
>
> (2) except with respect to liability under a written sidetrack agreement or the use of elevators
>
> \* \* \* \* \* \*
>
> (d) to that *particular part* of any property, not on premises owned by or rented to the insured,
>> (i) upon which operations are being performed by or on behalf of the insured at the time of the property damage arising out of such operations, or
>> (ii) out of which any property damage arises, or
>> (iii) *the restoration, repair or replacement of which has been made or is necessary by reason of faulty workmanship thereon by or on behalf of the insured;*
> (3) with respect to the completed operations hazard and with respect to any classification stated in the policy or in the company's manual as "including completed operations," to property damage to work performed by the named insured arising out of such work or any portion thereof, or out of such materials, parts or equipment furnished in connection therewith.

(Emphasis added.)

Gar–Tex asserts that sections VI(A)(2) and (3)[2] of the endorsement are not applicable in this particular instance, and that if the ordinary definitions of "operations," "arising out of," and "arises" are used, the

---

**1.** An endorsement modifies or amends the policy. In this case, the endorsement provides, "This endorsement shall be subject to all of the terms, provisions and conditions of the policy, and nothing herein shall vary, alter, or extend any term, provision or condition of the policy except as herein specifically stated. The endorsement forms a part of the policy to which it is attached issued by the company designated on the Declarations page and is effective from the inception of the policy unless otherwise stated below."

**2.** Gar–Tex also asserts that exclusion (a) of the broad form policy does not apply. Because Employers conceded at oral argument that exclusion (a) does not apply, we do not address this portion of Gar–Tex's argument.

policy will be construed as covering Gar-Tex's loss. Gar-Tex maintains that because no actual work was being performed on the clearwell during the weekend of May 24–25, 1986, there were no "operations," and because its work on the clearwell was not defective, the exclusions do not apply.

"Operations," as used in the policy, does not require active construction. Gar-Tex was in possession of and occupied the clearwell and the various precautionary structures until its subcontract was completed. Otherwise, Gar-Tex could not effectively carry out its contractual obligations to build and complete the clearwell. *See McCord, Condron & McDonald, Inc. v. Twin City Fire Ins. Co.*, 607 S.W.2d 956, 958 (Tex.Civ.App.—Fort Worth 1980, writ ref'd n.r.e.). Moreover, Gar-Tex did not establish that it had "turned over" the partially completed clearwell to Red River or the City of Ennis. *See id.* Thus, we conclude that the damage was sustained by property upon which operations were being performed by Gar-Tex. Further, Gar-Tex contends that there is no summary judgment evidence of negligence or faulty workmanship on the part of Gar-Tex; therefore, Gar-Tex maintains that its factual situation is clearly outside the scope of the express language of section VI(A)(2) of the endorsement.

The excerpts from the broad form policy clearly show that the policy is designed to provide indemnity to the insured for "all sums which the insured shall become legally obligated to pay as *damages* because of ... bodily injury [and] ... property damages ... caused by an occurrence." (Emphasis added.) The broad form policy "does not insure the contractor against his own failure to perform his contract, but [it] does insure him against liability for damages other than to the building itself as the result of his performance, whether defective or otherwise." *See McCord*, 607 S.W.2d at 958, *quoting Eulich v. Home Indem. Co.*, 503 S.W.2d 846, 849 (Tex.Civ. App.—Dallas 1973, writ ref'd n.r.e.) (construing a broad form policy which is identical to the broad form policy issued by Employers in this instance). The endorsement narrows the application of the broad form policy to the particular part of the property with which the insured or its subcontractor *had contact* in causing the loss. This type of insurance is described as a liability policy, not a "builder's risk policy." *Employers Cas. Co. v. Brown–McKee Inc.*, 430 S.W.2d 21, 25 (Tex.Civ.App.—Tyler 1968, writ ref'd n.r.e.). Thus, we conclude that the broad form policy and endorsement were not intended to insure damage to that particular part of the property that was damaged by reason of faulty workmanship. In order to determine whether Gar-Tex's claim was covered by the broad form policy or endorsement, we must decide whether any of the exclusions in the broad form policy or endorsement actually excludes the liability asserted here. Upon review of these exclusions, we keep in mind the fact that Gar-Tex had the duty to show the loss here was due only to a peril covered by the policy and to show that the exclusions did not apply. *McCord*, 607 S.W.2d at 958, *citing Travelers Indem. Co. v. McKillip*, 469 S.W.2d 160, 162 (Tex.1971).

In this instance, Gar-Tex was contractually obligated to construct a clearwell and to take the following measures to prevent damage to the clearwell while it was under construction:

1A–15. *UNFAVORABLE CONSTRUCTION CONDITIONS.* During unfavorable weather, wet ground, or other unsuitable construction conditions, the Contractor shall confine his operations to work which will not be affected adversely by such conditions. No portion of the Work shall be constructed under conditions which would affect adversely the quality or efficiency thereof, unless special means or precautions are taken by Contractor to perform the work in a proper and satisfactory manner.

. . . .

2A–8. *DEWATERING.* Dewatering equipment shall be provided to remove and dispose of all surface and ground water entering excavations, trenches, or other parts of the work. *Each excavation shall be kept dry* during subgrade preparation and continually thereafter

until the structure to be built, or the pipe to be installed therein, is completed *to the extent that no damage from hydro-static pressure, flotation, or other cause will result.*

All excavations for concrete structures or trenches which extend down to or below ground water shall be dewatered by lowering and keeping the ground water level beneath such excavations 12 inches or more below the bottom of the excavation.

Surface water shall be diverted or otherwise prevented from entering excavated areas or trenches to the greatest extent practicable without causing damage to adjacent property.

. . . .

1E–14. *TEMPORARY DRAINAGE PROVISIONS.* Contractor shall provide for the drainage of stormwater and such water as may be applied or discharged on the site in performance of the Work. Drainage facilities shall be adequate to prevent damage to the Work, the site, and adjacent property.

(Emphasis added.)

Because Gar–Tex was contractually obligated by job specifications to keep the excavation site dry until the clearwell was completed, we conclude that, as a matter of law, Gar–Tex failed to follow specifications. Further, we conclude that the failure to follow specifications constitutes faulty workmanship. Thus, the broad form policy and endorsement exclude coverage for damages resulting from the insured's failure to follow specifications. *Eulich,* 503 S.W.2d at 849. As explained in *Eulich:*

> The context shows plainly that "property damage to work performed" means damage to the building, and that "arising out of the work" means resulting from performance of the work by the contractor, including his negligence or failure to follow specifications. Thus *the policy clearly excludes liability for damage to the building resulting from the contractor's failure to perform according to specifications.*

*Id.* (emphasis added). We recognize that this Court in *Eulich* based its determina-tion on its reading of the broad form policy; however, we conclude that the language in the endorsement, *i.e.,* "faulty workman-ship," excludes coverage for negligence *or* failure to follow specifications. Thus, Gar–Tex's failure to follow specifications pre-cludes recovery for that particular part of the property which must be repaired by reason of Gar–Tex's failure to follow speci-fications.

In the alternative, Gar–Tex argues that even if its precautionary measures were deficient or negligent, the work product exclusion would not bar coverage since the damage was not to the alleged defective work (the cofferdam and pumps), but to the clearwell itself. Specifically, Gar–Tex as-serts that *Mid–United Contractors, Inc. v. Providence Lloyds Insurance Co.,* 754 S.W.2d 824 (Tex.App.—Fort Worth 1988, writ denied), demonstrates that Employers' argument is incorrect. Gar–Tex maintains that the present case is "precisely the situ-ation" presented in *Mid–United* and that Gar–Tex should be compensated by Em-ployers.

We agree with Gar–Tex's argument that if defective work is performed by or on behalf of the insured, and such defective work causes damage to *other work* of the insured that was not defective, then there would be coverage for repair, replacement, or restoration of the work which was not defective. *Dorchester Dev. Corp. v. Safe-co Ins. Co.,* 737 S.W.2d 380, 382 (Tex.App.—Dallas 1987, no writ). However, Gar–Tex contends that if its precautionary mea-sures were deficient, the work product ex-clusions would not bar coverage since the damage was not to the alleged defective work, the cofferdam and pumps, but to the clearwell itself. *See Travelers Ins. Co. v. Volentine,* 578 S.W.2d 501, 504 (Tex.Civ. App.—Texarkana 1979, no writ). In *Volen-tine,* a mechanic was hired to perform a "valve job" on an automobile engine. The "valve job" was defective and resulted in destruction of the entire engine. The court determined that Volentine's work or work product was the repair of the valves only and that other parts of the automobile en-

gine would constitute "other property."[3] *Id.* at 504. We conclude that *Volentine* is distinguishable from the present case. There, the work on part of the engine caused destruction of the entirety but not so here. Gar–Tex was employed to construct a clearwell, not a cofferdam or a water pumping system. These precautionary measures are not to be considered divisible from the clearwell project. As explained in *Mid–United,* section VI(A)(2) of the endorsement excludes recovery to that *particular part of the property with which the insured or its subcontractor had contact* in causing the loss. *See Mid–United,* 754 S.W.2d at 827. Accordingly, we hold that the damage to the clearwell was a direct result of Gar–Tex's failure to follow specifications in its construction of the clearwell and that Gar–Tex had contact in causing such loss.

We also disagree with Gar–Tex's contention that this case is similar to *Mid–United.* In *Mid–United,* the insured entered into a contract to construct a professional building for Trail Creek. The insured acted as the general contractor and employed subcontractors to perform various tasks. Upon the insured's completion of the contract, Trail Creek sued the insured, alleging that a number of defects existed, most of which were attributable to the subcontractors, but for which, the insured, as general contractor, was responsible. The insured then sued the insurer under its comprehensive general liability policy. The court of appeals reviewed the effect of various provisions of the policy, including the endorsement. The endorsement in *Mid–United* is almost identical to the endorsement in this case. The court explained the effect of the endorsement as follows:

> The broad form property damage endorsement replaces exclusion (k), the care, custody and control exclusion, and exclusion (*o*), the workmanship exclusion, and is more narrow in scope than the exclusions it replaces. *The endorsement narrows the application of the two exclusions to the particular part of the property with which the insured or its subcontractor had contact in causing the loss.* Under the more restrictive language of the endorsement, the insured is protected by the endorsement's *completed operation coverage* when the insured is legally liable for property damage to the work of a subcontractor, to the work of the insured or other subcontractors arising from the work of a subcontractor of the insured. In other words, *although appellant [the insured] would have no insurance coverage for damage to its work or arising out of its work, appellant was covered for damage to its work arising out of a subcontractor's work. By contrast, absent the endorsement, under exclusions (k) and (o), any property damage to work completed by appellant or on behalf of appellant by its subcontractors would be excluded.*

*Id.* at 827 (emphasis added) (footnotes omitted).

It is apparent from Gar–Tex's argument that it is relying on the latter portion of the court's explanation; however, the latter portion of the explanation relates to subsection (3) regarding completed operations. "Completed operations hazard" is defined within the broad form policy as including:

> bodily injury and property damage arising out of operations or reliance upon representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the

---

**3.** In *Volentine,* the court was dealing with the following exclusion: "(k) to property damage to (1) property owned or occupied by or rented to the insured, (2) property used by the insured, or (3) property in the care, custody or control of the insured or as to which the insured is for any purpose exercising control; but parts (2) and (3) of this exclusion do not apply with respect to liability under a written side track agreement and part (3) of this exclusion does not apply with respect to property damage (other than to elevators) arising out of the use of an elevator at premises owned by, rented to or controlled by the named insured." This exclusion is identical to the exclusion in the broad form policy in the instant case that was replaced by section VI(A)(2) of the endorsement.

named insured. "Operations" include materials, parts or equipment furnished in connection therewith. Operations shall be deemed completed at the earliest of the following times:

(1) *when all operations to be performed by or on behalf of the named insured under the contract have been completed,*

(2) when all operations to be performed by or on behalf of the named insured at the site of the operations have been completed, or

(3) when the portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

(Emphasis added.) In its brief, Gar–Tex concedes that it had not completed its work on the clearwell. Based upon the definition of "completed operations hazard," we hold that section VI(A)(3) is not applicable in this situation because the damage occurred before operations had been completed. Consequently, *Mid–United* is distinguishable.

Gar–Tex next argues that if we determine the insurance policy to be ambiguous, any ambiguity must be construed in favor of coverage. We agree that when there is an ambiguity, the policy is to be construed in favor of the insured. *Puckett v. U.S. Fire Ins. Co.*, 678 S.W.2d 936, 938 (Tex. 1984). However, this rule has no bearing when the policy is unambiguous. *Id.* In addition, Gar–Tex does not cite any authority in which the exclusions, which are of common usage in the construction industry, were held ambiguous. *See Dorchester*, 737 S.W.2d at 383. We conclude that the policy is *not* ambiguous.

Finally, Gar–Tex asserts that, at a minimum, genuine issues of material fact exist which preclude summary judgment in favor of Employers. A defendant who moves for summary judgment has the burden of showing the trial court as a matter of law that no material issue of fact exists as to the plaintiff's cause of action. *Griffin v.*

*Rowden*, 654 S.W.2d 435, 435–36 (Tex. 1983). Once a movant for summary judgment conclusively establishes its right to summary judgment as a matter of law, the nonmovant must then expressly present to the trial court a reason for seeking to avoid the movant's entitlement and then support such reason with competent summary judgment evidence sufficient to raise an issue of material fact for trial. *Westland Oil Dev. Corp. v. Gulf Oil*, 637 S.W.2d 903, 907 (Tex.1982). The only possible issue of material fact is whether the electricity was off for an extended period of time, thereby rendering the water pumps inoperable and contributing to the damage to the clearwell. This issue is not material because we have already determined, as a matter of law, that Gar–Tex was responsible for preventing water damage to the clearwell. The specific reason for Gar–Tex's failure to perform that function is immaterial. Consequently, we hold that no genuine issue of material fact exists which would defeat summary judgment in favor of Employers.

Accordingly, we overrule all of Gar–Tex's points of error and affirm.