Opinion issued August 15, 2013



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-12-00587-CV

_____

**MID-CONTINENT CASUALTY COMPANY, Appellant/Cross-Appellee**

**V.**

**ROBERT E. KROLCZYK, Appellee/Cross-Appellant**

On Appeal from the 155th District Court
Waller County, Texas
Trial Court Case No. 06-0618336

**OPINION ON REHEARING**[*]

In this agreed interlocutory appeal, we must determine whether the insurer, Mid-Continent Casualty Company, owed its insured, Robert Krolczyk, a duty to defend in a suit involving damage to a road built by Krolczyk. Mid-Continent contends that it had no duty to defend because two exclusions in its commercial general liability policy barred insurance coverage. Because the allegations potentially support a covered claim outside the exclusions, we render a declaratory judgment in favor of Krolczyk.

## Background

This case arises from a dispute about the construction of a road built for a subdivision and the insurance coverage for damage to that road. Krolczyk owned a tract of land in Waller County, which he subdivided into seven lots and sold to purchasers for home sites. As part of the development and sale of the lots, Krolczyk built Hunter's Ridge Road through the center of the subdivision. He completed the base of the road in the year 2000, and he completed the paving and sealing of the road in 2003. In 2006, Krolczyk sued the subdivision's homeowners association, named as the Hunter's Ridge Maintenance Association, for damage to the road. He alleged that the home owners had moved between 50 and 125

---

[*] Appellant Mid-Continent Casualty Company moved for rehearing of our June 6, 2013 opinion and judgment. We deny the motion for rehearing. We withdraw our prior opinion and judgment and issue the following opinion and judgment in their stead. All other pending motions are denied as moot.

dumptruck-loads of earth over his objection, damaging the road. He sought declaratory relief to determine the rights and responsibilities of the parties for repairs. The Hunter's Ridge Homeowners Association, representing the homeowners as an unincorporated association, intervened and filed counterclaims against Krolczyk, alleging that he agreed to provide a paved road, but the road he built was "totally inadequate" due to faulty construction. The Association's factual allegations pertinent to Krolczyk's construction of the road include:

14. Hunter's Ridge Road was not built as a single project, but as three separate projects.

15. The first segment of the project constituted the construction of the drainage ditches and base for the entire project, and the laying of the asphalt for the first 1/3 of the length of the road.

16. The second 1/3 of the project was completed approximately 18 months after the initial phase.

17. The second 1/3 of Hunter's Ridge Road's construction consisted of the laying of the asphalt surface but with no additional compaction or reworking of the road base.

18. The last phase of Hunter's Ridge Road was completed after the second, again without reworking of the base after extended exposure to the elements.

19. Krolczyk utilized washed concrete instead of stabilized concrete as part of the base.

20. The drainage alongside the Hunter's Ridge Road was not adequate to prevent rain water from washing out some of the base which had been exposed to the elements.

21. As a result of the inadequate base material used, the extended exposure of the base to the elements, and the poor drainage construction, the base under the Hunter's Ridge Road failed.

22. The failure of the base of Hunter's Ridge Road has caused the asphalt surface to crack and pothole after less than one year of use.

. . . .

27. Hunter's Ridge Road, as constructed and in its current condition, does not meet the county standards of Waller County, even for the limited traffic it will handle.

28. Much of the current roadway was overlaid once before without success of correcting the problems which were present at that time.

29. One of the causes for the lateral cracking found in the road bed is poor joint construction.

Based on these allegations, the Association asserted causes of action against Krolczyk for breach of contract, deceptive trade practices, common-law fraud, negligent misrepresentation, and fraud in a real estate transaction. The Association sought damages to replace two-thirds of the road.

Krolczyk tendered the Association's claims to his insurer, Mid-Continent. In June 2009, Mid-Continent responded with a reservation-of-rights letter, noting that the Association alleged that the road had been poorly constructed and that this may limit or preclude coverage under the policy. Krolczyk filed an answer to the Association's claims, asserting a defense of contributory negligence for the damage to the road. Later, Mid-Continent sent a letter acknowledging that its duty to defend Krolczyk had been triggered, but it continued to reserve its right to

4

determine whether insurance coverage was limited by the policy. Although Krolczyk had selected his own attorney, Mid-Continent attempted to select another attorney to defend the lawsuit. Krolczyk's attorney informed Mid-Continent that it had created a conflict of interest when it issued the reservation-of-rights letter, and therefore Krolczyk was entitled to select his own attorney.

A few weeks later, Mid-Continent informed Krolczyk that it had determined that the policy did not cover the damages sought in the lawsuit. In response, Krolczyk filed a petition seeking a declaratory judgment that he was entitled to a defense under the insurance policies. Mid-Continent asserted a defense that a property-damage exclusion in the policy, called the "your work" exclusion, applied to preclude coverage. Krolczyk filed a motion for summary judgment, which the trial court denied. After asserting that an additional "earth movement" exclusion also applied, Mid-Continent filed its own motion for summary judgment. The trial court denied all motions for summary judgment.

Krolczyk and Mid-Continent then jointly moved for permission to pursue an interlocutory appeal. *See* Act of May 11, 2005, 79th Leg., R.S., ch. 97, § 5, sec. 10.3, 2005 Tex. Gen. Law 180 (amended 2011) (current version at TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(d) (West Supp. 2012)). The trial court granted the motion and stayed litigation pending the appeal. The controlling issue as identified

5

by the parties is whether Mid-Continent owes Krolczyk a duty to defend under the insurance policy.

**Analysis**

We review the trial court's ruling on a summary-judgment motion de novo. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). In our review of cross-motions for summary judgment, we review the summary-judgment evidence presented by each party, determine all questions presented, and render the judgment that the trial court should have rendered. *Tex. Mun. Power Agency v. Pub. Util. Comm'n*, 253 S.W.3d 184, 192 (Tex. 2007).

When determining whether an insurer has a duty to defend, we follow the eight-corners rule by looking at the four corners of the complaint for alleged facts that could possibly come within the scope of coverage in the four corners of the insurance policy. *Evanston Ins. Co. v. Legacy of Life, Inc.*, 370 S.W.3d 377, 380 (Tex. 2012). The duty to defend is broader than, and distinct from, the duty to indemnify. *Utica Nat'l Ins. Co. of Tex. v. Am. Indem. Co.*, 141 S.W.3d 198, 203 (Tex. 2004). The duty to defend does not depend on the truth or falsity of the allegations; a plaintiff's factual allegations that could potentially support a covered claim are all that is needed to invoke the insurer's duty to defend. *GuideOne Elite Ins. Co. v. Fielder Road Baptist Church*, 197 S.W.3d 305, 310 (Tex. 2006). Insureds are favored when examining both the complaint and the policy. *Legacy of*

6

*Life*, 370 S.W.3d at 380.  If the complaint includes even one covered claim, the insurer must defend the entire suit.  *Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 491 (Tex. 2008).

Initially, the insured has the burden of establishing coverage under the terms of the policy.  *Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 782 (Tex. 2008).  If the insured proves coverage, then to avoid liability the insurer must prove that the loss falls within an exclusion.  *Id.* at 778.  "When interpreting an insurance contract, we 'must adopt the construction of an exclusionary clause urged by the insured as long as that construction is not unreasonable, even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent.'"  *Evanston Ins. Co. v. ATOFINA Petrochems., Inc.*, 256 S.W.3d 660, 668 & n.25 (Tex. 2008) (quoting *Nat'l Union Fire Ins. Co. v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex. 1991)).  Any limitations on liability are strictly construed against the insurer and in favor of the insured, and the insurer must express any intent to exclude coverage in clear and unambiguous language.  *Id.*

Although conceding that the underlying policy terms provide coverage, Mid-Continent asserts that two exclusions apply: one for "your work," excluding coverage for damage to the work performed by Krolczyk, and another for "earth movement."

7

## I. The "your work" exclusion

The "your work" exclusion, listed as term 2(j)(6) in the policy, provides that the CGL insurance does not apply to:

"Property damage" to:

. . .

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.[1]

"Your work" is defined, in relevant part, as "Work or operations performed by you or on your behalf." The "your work" exclusion is a business-risk exclusion, a common feature in CGL insurance policies that is designed to exclude coverage for defective work performed by the insured. *Mid-Continent Cas. Co. v. JHP Dev., Inc.*, 557 F.3d 207, 211 (5th Cir. 2009). While the general purpose of business-risk exclusions is to preclude coverage for damage to an insured's own work, the actual coverage for the type of risk depends on the policy's specific language. *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 13–14 (Tex. 2007).

---

[1] Mid-Continent asserts that Krolczyk waived the issue of challenging the application of the "your work" exclusion because he inadequately briefed it in his cross-appellant's brief. Krolczyk, however, presented the argument in his cross-appellee's brief that the exclusion does not defeat the duty to defend when defective work by the insured causes damage to nondefective work by the insured. As Krolczyk substantially complied with the rules for briefing by acquainting us with his argument and proper authorities, he has not waived this issue. *See* Tex. R. App. P. 38.9.

Under the "your work" exclusion, liability coverage does not apply only when two requirements are met: (1) the property damage is to "[t]hat particular part" that must be restored, repaired, or replaced (2) because the insured incorrectly performed work on it. *JHP Dev.*, 557 F.3d at 215. When an insurance contract's term is susceptible to more than one interpretation, we adopt the construction that most favors the insured. *Nat'l Union Fire Ins.*, 811 S.W.2d at 555. An exclusion that unambiguously precludes coverage for all property damage caused by the defective work of the insured should omit the limiting language referencing a "particular part of any property," and instead it should state something like: "Property damage to property that must be restored, repaired or replaced because your work was incorrectly performed on any part of it." *See Gore Design Completions, Ltd. v. Hartford Fire Ins. Co.*, 538 F.3d 365, 371–72 (5th Cir. 2008) (construing the "that particular part" language not to exclude coverage for the insured's nondefective work damaged by defective work performed elsewhere in the same project). The exclusion only precludes coverage for repairing or replacing the insured's defective work; "it does not exclude coverage for damage to other property resulting from the defective work." *Wilshire Ins. Co. v. RJT Const., L.L.C.*, 581 F.3d 222, 226 (5th Cir. 2009) (citing *Travelers Ins. Co. v. Volentine*, 578 S.W.2d 501, 503 (Tex. Civ. App.—Texarkana 1979, no writ)); *see also Mid-Continent Cas. Co. v. Bay Rock Operating Co.*, 614

9

F.3d 105, 115–16 (5th Cir. 2010) (holding that the j(6) term restricts the exclusion to property damage to that particular part of the project that was subject to the insured's defective work); *Gore Design*, 538 F.3d at 371–72 (same).

We look to the factual allegations of the underlying suit to determine whether the insurer has a duty to defend. *Zurich Am.*, 268 S.W.3d at 495. "The duty to defend is not negated by the inclusion of claims that are not covered; rather, it is triggered by the inclusion of claims that might be covered." *Id.* at 495–96. The relevant allegations in the underlying suit were that Krolczyk had built the road in three phases. In the first phase Krolczyk built drainage ditches and the base of the whole road, and he laid asphalt to surface the first third of the road length. Eighteen months later, he laid asphalt for the second third of the road length, but he did not rework the road base. Finally, "after extended exposure to the elements," he surfaced the remaining length of the road, but again he did not rework the base. The Association also alleged that the drainage alongside the road was "not adequate to prevent rain water from washing out some of the base." The road base allegedly "failed" as a result of Krolczyk's failure to rework the base or construct adequate drainage, and this failure allegedly "caused the asphalt surface to crack and pothole after less than one year of use." The road was rendered useless and unable to meet the standards of Waller County.

In *Mid-Continent Casualty Co. v. JHP Development, Inc.*, 557 F.3d 207, 214–15 (5th Cir. 2009), which presented a similar question, the Fifth Circuit interpreted the same exclusion not to preclude coverage for the insured's nondefective work damaged by the insured's own defectively performed work. A construction company installed concrete firewalls, exterior finishes, electrical wiring, stud framing, interior drywall, and wood flooring for a condominium project. *Id.* at 210. The builder failed to water-seal the exterior finishes and firewalls, which later allowed rain to severely damage both the defective exterior work and the nondefective interior work it had performed. *Id.* Even though the insured had performed both the defective work and the nondefective work, the court held that the insurer had a duty to defend: "[E]xclusion j(6) bars coverage only for property damage to parts of a property that were themselves the subject of defective work by the insured; the exclusion does not bar coverage for damage to parts of a property that were the subject of only nondefective work by the insured and were damaged as a result of defective work by the insured on other parts of the property." *Id.* at 215; *see also Am. Home Assur. Co. v. Cat Tech, L.L.C.*, 660 F.3d 216, 223 (5th Cir. 2011).

In *JHP Development*, there was no allegation that the builder had performed defective work on the interior portions of the project. *See JHP Dev.*, 557 F.3d at 217. Attempting to distinguish *JHP Development* on this basis, Mid-Continent

11

asserts that the Association here alleged that all of Krolczyk's work on the road was defectively performed. But the allegations here are unclear as to whether all of the work was defectively performed by Krolczyk. An insurer must defend the suit "[i]f a complaint potentially includes a covered claim." *Zurich Am.*, 268 S.W.3d at 491. Although we do not look outside the pleadings or "imagine factual scenarios which might trigger coverage," we interpret the allegations in the suit liberally to favor the insured. *Nat'l Union Fire Ins. Co. v. Merch. Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141–42 (Tex. 1997). Additionally, "we may draw inferences from the petition that may lead to a finding of coverage." *Gore Design*, 538 F.3d at 369 (quoting *Gen. Star Indem. Co. v. Gulf Coast Marine Assocs.*, 252 S.W.3d 450, 456 (Tex. App.—Houston [14th Dist.] 2008, pet. denied)).

Construing the Association's petition liberally in favor of Krolczyk and without regard to the truth or falsity of the allegations, the allegations suggest that there is a potentially covered claim. The Association alleged that Krolczyk laid asphalt on the surface of the road, which "after less than one year of use" cracked and formed potholes due to the "failure of the base." There is no specific allegation that the surfacing work was performed defectively; instead, the allegations state that the surface became damaged due to defects in the work performed on the road base, such as failing to perform "additional compaction or reworking of the road base" after it had lain dormant with "extended exposure to

the elements," the use of "washed concrete instead of stabilized concrete as part of the base," and the failure to provide adequate drainage "to prevent rain water from washing out" the exposed base. The Association also alleged that "[o]ne of the causes for the lateral cracking found in the road bed is poor joint construction."

Under these alleged facts, "that particular part" of the work that was defectively performed would be excluded from coverage, such as Krolczyk's construction of the road base, while parts of the work that were not defectively performed by Krolczyk would be covered, such as his later work paving or repaving the road. *Dorchester Dev. Corp. v. Safeco Ins. Co.*, 737 S.W.2d 380, 382 (Tex. App.—Dallas 1987, no writ) ("[I]f defective work is performed by or on behalf of the insured, and such defective work causes damage to *other work* of the insured which was not defective, then there would be coverage for repair, replacement or restoration of the work which was *not* defective."), *abrogated on other grounds by Don's Bldg. Supply, Inc. v. OneBeacon Ins. Co.*, 267 S.W.3d 20, 26 (Tex. 2008). Although the allegations describing Krolczyk's work paving the road include allegations that he failed to rework the road base, under a liberal reading, these do not necessarily mean that Krolczyk performed the paving work defectively; rather, mention of the failure to rework the base could have simply been an explanation how the paving work was damaged by the defective work on the base.

Mid-Continent urges that we consider the road as a unitary whole, so the "that particular part" language would necessarily refer to Krolczyk's work on the road altogether rather than to separate parts of the road project.[2] Two factors lead us to reject this interpretation. First, the allegations themselves expressly divide the road into three distinct phases. They also separately describe different aspects of the project, including construction of the base, providing adequate drainage, and surfacing the road. Second, construction of a road is a large project that can be

[2] Mid-Continent references *Gar-Tex Construction Co. v. Employers Casualty Co.*, 771 S.W.2d 639 (Tex. App.—Dallas 1989, writ denied), as an example of a case in which a large construction project, a clearwell, was held to not have separate parts for insurance purposes. The case is inapposite. *Gar-Tex* was not a duty-to-defend case, but an indemnity case in which the construction company was found to have caused the damage due to its faulty work on the clearwell site. *Id.* at 643. Thus, there was no nondefective work to which a "that particular part" exclusion would not have applied. *See id.* at 643–44 (distinguishing those cases in which the insured's faulty work damages nondefective work because the damage to the clearwell was a direct result of Gar-Tex's failure to follow specifications).

The other Texas case that Mid-Continent offers to support its argument that the road must be considered an indivisible whole, *Southwest Tank & Treater Manufacturing Co. v. Mid-Continent Casualty Co.*, 243 F. Supp. 2d 597 (E.D. Tex. 2003), was rejected as applying to multi-part construction projects such as in this case. *Gore Design Comp., Ltd. v. Hartford Fire Ins. Co.*, 538 F.3d 365, 371 n.8 (5th Cir. 2008) ("The only case cited for that proposition [that the exclusion applies to the entire project, not just the electrical system in question] is *Sw. Tank & Treater Mfg. Co. v. Mid-Continent Cas. Co.*, 243 F. Supp. 2d 597, 603–04 (E.D. Tex. 2003). That case is not binding precedent on this court, and it has not been relied upon as authority by this court. The court there also focused on the insured's work on the entire tank that was damaged, rather than on a particular part.").

completed using varied construction techniques, equipment, and materials. This makes the application of the "your work" exclusion to a road construction project comparable to other authorities which have applied the exclusion to large projects with several major subparts.[3] Likewise, the construction of a road is not comparable to a small, unitary item that lacks separate parts on which different types of work are performed.[4] Favoring the insured in construing both the complaint and the policy, we conclude that the road project was not an indivisible whole under these allegations, but instead it was composed of several particular parts to which the j(6) exclusion may or may not apply.

---

[3] *See, e.g.*, *Mid-Continent Cas. Co. v. Bay Rock Operating Co.*, 614 F.3d 105, 115–16 (5th Cir. 2010) (holding an intermediate casing seat and surrounding formation was validly found to be separate part of oil well for liability purposes); *Mid-Continent Cas. Co. v. JHP Dev., Inc.*, 557 F.3d 209, 215 (5th Cir. 2009) (considering exterior walls of condominium project as different particular part than interior drywall and electrical work); *Gore Design*, 538 F.3d at 371 (component of electrical system different particular part from aircraft as a whole).

[4] *See, e.g.*, *Vinsant Elec. Contractors v. Aetna Cas. & Sur. Co.*, 530 S.W.2d 76, 76–77 (Tenn. 1975) (holding a switchboard is a "unit of property within itself, self-contained" and constituted one "particular part" for purposes of policy exclusion, although it was composed of many smaller electrical components).

Thus, under a liberal reading, the Association's complaint potentially includes a covered claim, and the "your work" exclusion does not abrogate Mid-Continent's duty to defend the suit.[5]

## II. The "earth movement" exclusion

Mid-Continent also argues that the "earth movement" exclusion applies to bar coverage in the suit. That exclusion states:

> This insurance does not apply to . . . "property damage" . . . arising out of, caused by, resulting from, contributed to, aggravated by, or related to earthquake, landslide, mudflow, subsidence, settling, slipping, falling away, shrinking, expansion, caving in, shifting, eroding, rising, tilting or any other movement of land, earth or mud.

Mid-Continent urges us to adopt a construction of the exclusion to include minor movements of the earth caused by rain or the elements, noting that *Webster's Ninth New Collegiate Dictionary* defines "erode" as "to wear away by the action of water, wind, or glacial ice." The Association alleged that some of the damage to the road was caused by the "washing out [of] some of the base which had been exposed to the elements." The Association attributed the failure of the base of the road, and ultimately the road itself, partially to "the extended exposure of the base to the elements." Thus, Mid-Continent argues that all of the property damage that

---

[5] Because we conclude that the j(6) "your work" exclusion does not abrogate Mid-Continent's duty to defend, we need not examine the parties' additional arguments about Krolczyk's contention that a "products-hazard operations" exception applies to the exclusion.

allegedly occurred in the underlying case was at least "related to" the "movement of land, earth or mud." Krolczyk responds by pointing out that the exclusion states that the movement must be that "of land, earth or mud," but the allegations are that the road base was made of man-made materials including concrete. Aside from the allegations concerning the road base, there is no allegation that the road damage was related to the movement of land, earth, or mud.

We apply the ordinary and generally-accepted meaning of a policy's terms, unless the policy shows the words were meant in a technical or other sense. *Gilbert Texas Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 126 (Tex. 2010). For the "earth movement" exclusion to apply, the property damage must be related to the movement "of land, earth or mud." The ordinary meanings of land, earth, and mud do not encompass concrete or other man-made materials. Favoring the insured as we must when examining the eight corners of the petition and the insurance policy, we adopt Krolczyk's interpretation of the exclusion that it does not apply to the movement of man-made materials, as his construction is not unreasonable. *See ATOFINA Petrochems., Inc.*, 256 S.W.3d at 668.

As for the allegations contained in the pleadings, they do not specify whether the "part of the base" of the road that was "exposed to the elements" and washed out by rain water was built of land, earth, or mud. The only other aspect of

17

the pleading which relates to the potential application of the earth-movement exclusion is that "Krolczyk utilized washed concrete instead of stabilized concrete as part of the road base." When the allegations in the pleadings do not state facts sufficient to clearly bring the case within or without the coverage, the insurer is obligated to defend as long as there is potentially a covered claim under the pleadings. *Lexington Ins.*, 355 S.W.3d at 210–11. As the road base could have been built of materials other than earth, land, or mud, and the allegations do not mention any other earth movement, the allegations do not clearly establish that the exclusion does or does not apply. Accordingly, we conclude that the "earth movement" exclusion does not abrogate Mid-Continent's duty to defend Krolczyk.

## Conclusion

Mid-Continent has not proven that the exclusions in its commercial general liability insurance policy bar coverage of the claims in the underlying suit. Accordingly, it owes Krolczyk a duty to defend against the claims asserted by the Association. We hold that the trial court improperly denied summary judgment to Krolczyk, although it properly denied summary judgment in favor of Mid-Continent. We therefore render a declaratory judgment that Mid-Continent owes a duty of defense to Krolczyk.


Michael Massengale
Justice

Panel consists of Justices Jennings, Bland, and Massengale.