**EMPLOYERS CASUALTY COMPANY, Appellant,**

v.

**BROWN–McKEE, INC., Appellee.**

No. 374.

Court of Civil Appeals of Texas. Tyler.

June 27, 1968.

Rehearing Denied July 18, 1968.

Gibson, Ochsner, Harlan, Kinney & Morris, James H. Doores and S. Tom Morris, Amarillo, for appellant.

Key, Carr, Carr & Clark, Donald M. Hunt, Lubbock, for appellee.

DUNAGAN, Chief Justice.

This is a suit for declaratory judgment. Appellant, defendant below, Employers Casualty Company, hereinafter called Employers, insured appellee, plaintiff below, Brown-McKee, Inc., hereinafter called Brown-McKee, under a comprehensive general liability insurance policy. Panhandle Wheat Growers, Inc., hereinafter called Panhandle, sued Brown-McKee and Fidelity and Casualty Company of New York, surety on performance bond, for loss of storage revenue allegedly caused by improper construction and repair to a grain elevator which had been constructed by Brown-McKee for Panhandle. Panhandle is not a party to this suit. Brown-McKee called upon Employers for defense under its policy; Employers refused and Brown-McKee sought declaratory judgment. Both parties filed motions for summary judgment, and the court granted Brown-McKee's motion and Employers' motion was denied. Employers duly perfected its appeal.

In brief, Panhandle's petition alleged that Brown-McKee contracted with Panhandle to build a grain elevator for Panhandle; that the elevator was completed in

1962; that the construction was defective and leaks developed which Brown-McKee attempted to repair; that future leaks developed and the Commodity Credit Corporation required Panhandle to move all grain out of the elevator, and that as a result thereof, Panhandle lost storage revenues for a period of 18 months in the total amount of $24,094.75. Panhandle makes no claim in its suit for damages to the grain or to any other physical property. The grain herein involved was owned by the Commodity Credit Corporation which is not a party to the suit instituted by Panhandle.

To state the facts more fully, it is shown that on or about June 14, 1966, Brown-McKee was sued by Panhandle in the 100th District Court of Carson County, Texas. In said suit, Panhandle alleged that Brown-McKee had failed to properly construct and repair a concrete grain storage elevator in Carson County, Texas, for Panhandle, and that Brown-McKee had been guilty of (1) a breach of its warranty that said elevator would be a sturdy, well-designed, well-constructed, weather-proof building, guaranteed not to leak, and (2) negligence in failing to properly construct and/or repair said building so as to prevent leaks.

Panhandle then claimed that such breach of warranty and negligence had resulted in certain leaks and defects in construction which had allowed water to enter the elevator and damage government grain stored therein and that, when the government found that the grain had been damaged, it removed the grain from the elevator, thereby causing a loss in grain storage revenue by Panhandle in the amount of $24,094.75, based upon the alleged estimated time which the grain could have been expected to remain in said elevator but for the damage to the grain.

When notice of the Carson County suit was served upon Brown-McKee, it called upon Employers to defend said suit, which Employers refused to do. Brown-McKee filed this suit in the 140th District Court of Lubbock County for declaratory judgment requiring Employers to defend it in suit brought against it by Panhandle.

Employers' sole point of error is: "The Trial Court erred in granting BROWN-McKEE'S motion and in overruling EMPLOYERS' motion because, as a matter of law, the insurance contract does not cover the claim alleged by PANHANDLE against BROWN-McKEE."

Insofar as we can ascertain, the question here presented has never been passed on by the Texas appellate courts and apparently this case is one of first impression in this state.

Employers says the issue in this case at bar is whether the cause of action alleged by Panhandle against Brown-McKee is within the coverage of Employers' liability policy.

Employers further says that under Insuring Agreement II of the policy, it agreed to defend any suit against Brown-McKee within the coverage of the policy. The pertinent coverage provision is Insuring Agreement I, Coverage B—Property Damage Liability, under which Employers agrees:

"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident."

This Coverage Agreement is subject to the Exclusions of the policy and the pertinent Exclusion is as follows:

"This policy does not apply:

\*    \*    \*    \*    \*    \*

"(h) under coverage B, to injury to or destruction of \* \* \* (4) any goods, products or containers thereof manufactured, sold, handled or distributed or premises alienated by the named insured, or work completed by or for the named insured, out of which the accident arises;"

It is the position of Brown-McKee that the insurance policy issued to it by Employers clearly covers the cause of action asserted by Panhandle.

Brown-McKee says that under "Insuring Agreements" in the policy is a section entitled "Coverage B—Property Damage Liability" in which Employers agrees to "pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident." Brown-McKee then argues that considered alone, it is evident that this insuring clause is broad enough to cover the damage asserted by Panhandle in the Carson County suit. This seems to be undisputed by Employers. Brown-McKee further argues that whether the injury is claimed to be to the elevator or to the grain in the elevator, both the grain and the elevator are property, and this clause, unless there are to be subsequent Exclusions withdrawing coverage, states quite clearly that the insurer shall be obligated to pay *all* sums which the insured shall become legally obligated to pay as damages because of injury to property.

■ We think that the injury here involved was "caused by accident" under the accepted definition of accident, namely, that an accident is an unexpected, unforeseen or undesigned happening or consequence from "either a known or unknown cause." Bundy Tubing Company v. Royal Indemnity Company, 298 F.2d 151 (6th Cir., 1962); Bowman Steel Corporation v. Lumbermens Mutual Casualty Company, 364 F.2d 246 (3rd Cir., 1966); Pittsburgh Plate Glass Company v. Fidelity and Casualty Company of New York, 281 F.2d 538 (3rd Cir., 1960); American Indemnity Co. v. Jamison, 62 S.W.2d 197 (Tex.Civ. App., Texarkana, 1933, n. w. h.); Beaumont, S. L. & W. Ry. Co. v. Schmidt, 123 Tex. 580, 72 S.W.2d 899 (Tex.Com.App., 1934, opinion adopted); Massachusetts Bonding and Insurance Co. v. Orkin Ex-

terminating Company, 416 S.W.2d 396, 400 (Tex.Sup., 1967).

The controlling question in this case is: What is the property loss being asserted by Panhandle in its suit against Brown-McKee? Brown-McKee says that Panhandle "is suing for lost grain storage revenue which came about when the grain in the elevator was damaged and consequently removed by the government" and that coverage is therefore afforded because the claim is "for damages because of the injury to the grain" and because the claim "arose out of damage to the grain."

To determine the answer to what we have stated to be the controlling question, we must look to the petition of Panhandle in its suit against Brown-McKee.

Panhandle in its suit against Brown-McKee alleges that by reason of damage to the wheat caused by the leaks in the grain elevator, the Commodity Credit Corporation ordered the grain removed from the elevator, which was done, since which time the space occupied by said grain in its elevator has been empty and vacant and by reason thereof, it has lost whatever revenue from storage it would have received and that the same would not have been removed had the grain not been damaged. It further alleges that there was no probability or reason that the grain would have been removed from its elevator for at least 18 months or two years had Brown-McKee performed the contract in a proper and workmanlike manner, and in keeping with the plans and specifications of the contract, or if the defects had been properly and timely repaired. It also alleges that such loss of storage revenues and damages was due to the negligence of Brown-McKee, its agents and servants, and its failure to construct said elevator in a proper and workmanlike manner and in accordance with the plans and specifications and the terms and provisions of the contract, and also by reason of Brown-McKee's failure to properly repair said defects.

It is apparent that Panhandle in its suit contends that its loss of storage revenue by reason of the damaged grain resulted from the failure of Brown-McKee to construct the elevator in a workmanlike manner and to properly repair said defects caused by the improper construction of said elevator.

Employers, under its policy, is not liable for any failure on the part of Brown-McKee to perform their contract with Panhandle in a workmanlike manner or Brown-McKee's failure to properly repair said alleged defects in the elevator. The insurance issued by Employers was a liability policy, not a builder's risk policy.

In our search, we have found no Texas case construing this exclusion, but courts in other jurisdictions have done so and from those decisions, two principles are clearly established: (1) the exclusion eliminates any coverage for injury to or destruction of the product furnished or work completed by the named insured (Brown-McKee); and (2) if the defect in the product furnished or the work completed of the named insured causes damage to other property, there is coverage for such damage to the other property.

In McGann v. Hobbs Lumber Company, 150 W.Va. 364, 145 S.E.2d 476 (1965), Hobbs constructed a home for McGann. Part of the foundation wall collapsed and McGann sued Hobbs, who brought in his liability insurer, Aetna, as a third party defendant. The court stated the principal question in the case as follows:

"* * * Do the provisions of the insurance policy in question afford coverage to Hobbs which would indemnify it in relation to the action instituted by the McGanns?"

Construing coverage and exclusion provisions identical to those involved here, the court held that there was no coverage under the policy and no duty to defendant, stating:

"The insurance issued in the instant case is a liability policy, not a builder's risk policy, which, incidentally, this insured could have obtained if he had desired the coverage he now claims. This liability policy clearly was designed to indemnify the insured against damage to other property or parties. It was not intended to cover his property or work completed by the insured. In the light of reason, in view of its purpose and considering the situation of the parties, we are of the opinion that, by reason of the exclusion, the policy did not intend to offer coverage for damages to a building completed by the insured, but did offer liability coverage for such completed work.

\* \* \* \* \* \*

"* * * In view of our holding that the liability alleged in the complaint against Hobbs is excluded under (j) (4) of the Exclusions contained in the policy, the appellant, Aetna, has no duty to so defend. * * *"

In Liberty Building Co. v. Royal Indemnity Co., 177 Cal.App.2d 583, 2 Cal. Rptr. 329 (1960) the plaintiff, Liberty, a subdivider and building contractor, constructed and sold a number of houses. Many of these houses developed defects in the walls and the buyers brought suit or made claims against Liberty. Liberty called on Royal to defend the suits and Royal refused. Liberty settled the claims and sued Royal to recover the costs of defense and the amounts paid in settlement of the claims. Construing the same coverage and exclusion provisions as are involved here, the court affirmed the dismissal of plaintiff's suit, stating:

"It is true that defendant was bound to defend actions brought against plaintiff alleging liability under Coverage C even if the suits be 'groundless, false or fraudulent.' However, if the liability alleged by the complaints was excluded under Exclusion (f), defendant had no duty to defend. Thus the obligation to defend is measured by comparing the

terms of the insurance policy with the pleadings of the claimants who sued plaintiff. * * * In this connection, Exclusion (f) expressly excludes from liability under the policy, damage sustained by any 'goods or products * * * or premises alienated * * * or work completed * * * *out of which the accident arises.'* (Emphasis added.) This Exclusion means that if the insured becomes liable to replace or repair any 'goods or products' or 'premises alienated' or 'work completed' after the same has caused an accident because of a defective condition, the cost of such replacement or repair is not recoverable under the policy. However, if the accident also caused damage to some *other* property or caused personal injury, the insured's liability for such damage or injury becomes a liability of the insurer under the policy, and is not excluded. For example, if a contractor builds a house and as a result of an improper mixture of the stucco, water is absorbed into the walls and the stucco cracks and falls off and a child is injured by the falling stucco, the injury to the child would not be excluded under Exclusion (f) but the replacement cost of the stucco would be excluded. Also, if water absorbed into the walls should reach the interior walls and injure a valuable painting hanging there, the damage to the painting would be recoverable under the policy while the damage to the walls would not. The principle here applicable is well stated in Heyward v. American Casualty Company of Reading, Pa., D.C., 129 F.Supp. 4. At page 8 the court said: 'This Exclusion means that the policy will not protect the insured if he has to repair or replace some product or work which proved defective and caused an accident. The Exclusion has no reference to liability for damage to *other property* or *personal injury* arising out of such accident.' * * * *"

In Kendall Plumbing, Inc. v. St. Paul Mercury Insurance Company, 189 Kan. 528, 370 P.2d 396 (1962), Kendall entered into a contract to install a complete heating and air-conditioning system. It purchased, from two separate manufacturers, and installed a refrigeration unit and Square D Starter. The only connection between the refrigeration unit and the Square D Starter was electrical wires. At the time of the installation Kendall negligently failed to make the necessary pressure settings to the spring unit within the Square D Starter. Because of this negligence, the refrigeration unit ran without lubrication and was damaged. Kendall's insurance policy with St. Paul included property damage liability coverage which was identical with Coverage B of Employers' policy involved in this suit. Excluded from coverage was damage to or destruction of:

"Any goods or products manufactured, sold, handled, or distributed by the Insured or work completed by or for the Insured out of which the accident arises."

Kendall paid for the damages to the Square D Starter and the refrigeration unit. It admitted that there was no liability on the part of St. Paul because of damage to the Square D Starter, but sought to recover the damage to his refrigeration unit. St. Paul contended that by virtue of the exclusion there was no coverage for damage to any item or part handled by Kendall whether or not such item or part contributed to the injury. The trial court sustained St. Paul's position and the Supreme Court of Kansas affirmed, stating:

"Appellant contends that the exclusion provision excludes only the defective part which caused the injury but does not exclude other items handled or installed by it which were damaged by the defective item. This contention cannot be sustained. The exclusion provision definitely states that any goods or products handled or work completed by the insured are excluded. It is clear that the policy was intended to cover only damage to property or items which had not been handled by appellant. Goods or products

handled by it, or work completed by it, were specifically excluded.

\*    \*    \*    \*    \*    \*

"We find nothing ambiguous in the words or phrases used in the exclusion clause and this court should not search for ambiguities where the words used in the contract have a common and well understood meaning."

See also Volf v. · Ocean Accident And Guarantee Corporation, 50 Cal.2d 373, 325 P.2d 987 (1958); Vobill Homes, Inc. v. Hartford Accident And Indemnity Company, 179 So.2d 496 (La.Ct. of App., 1965, writ ref., 1966, 248 La. 698, 181 So.2d 398).

■ From any standpoint the suit by Panhandle is viewed, we are confronted with the fact it is not one for damages to the grain—it is for lost storage revenue, which, in effect, is for loss of the use of the elevator. Under Panhandle's pleadings, loss of use of the elevator is merely an element of damage to the elevator and coverage therefor is excluded under Exclusion (h) (4) of Employers' policy here in question.

The judgment of the trial court is reversed and rendered for the appellant (Employers).