**UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

---

No. 00-20487

---

AGIP PETROLEUM COMPANY, INC.,

Plaintiff-Appellant,

versus

GULF ISLAND FABRICATION, INC.,

Defendant—Third Party Plaintiff—Appellant—Appellee,

versus

SNAMPROGETTI USA, INC.,

Third Party Defendant—Counter Claimant—Appellant,

PETRO-MARINE ENGINEERING OF TEXAS, INC.,

Third Party Defendant—Appellant,

versus

UNDERWRITERS, Subscribing to Policy No. SJ0002, SJ0003A, and
SJ0003B issued by Sedgwick Energy (Insurance Services),

Third Party Defendant—Counter Defendant—Appellee.

AGIP PETROLEUM COMPANY, INC.,

Plaintiff—Appellant,

versus

GULF ISLAND FABRICATION, INC.,

Defendant—Third Party Plaintiff—Appellant—Appellee,

SNAMPROGETTI USA, INC.; MCDERMOTT, INC.,

Defendants—Counter Claimants—Appellants—Appellees,

PETRO-MARINE ENGINEERING OF TEXAS, INC.,

Defendant—Appellant—Appellee,

versus

UNDERWRITERS, Subscribing to Policy No. SJ0002, SJ0003A, and
SJ0003B issued by Sedgwick Energy (Insurance Services),

Third Party Defendant—Counter Defendant—Appellee.

_____

**Appeal from the United States District Court
for the Southern District of Texas
(H-94-CV-3547)**
_____

November 28, 2001

Before HIGGINBOTHAM, BARKSDALE, and STEWART, Circuit Judges.

PER CURIAM:[*]

Primarily at issue is whether, under Texas law, an insurance policy exclusion for "physical loss and/or damage to" insured property excludes coverage for loss of use of that property. Claiming coverage under their insurance policy against a loss of use action brought against them by Agip Petroleum Company, Inc., another insured under that policy, contractors of Agip contest the no-coverage summary judgment. **AFFIRMED.**

---

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

I.

Agip is a developer of off-shore oil and gas production. Its off-shore drilling platform at issue was designed, manufactured, and to be installed for Agip by four contractors: Snamprogetti USA, Inc., was responsible for engineering and supervising construction of the platform; Petro-Marine Engineering of Texas, Inc., a Snamprogetti subcontractor, for designing the platform; Gulf Island Fabrication, Inc., for fabricating the platform; and McDermott, Inc., for transporting the platform components to the drilling site in the Gulf of Mexico and for attaching the platform to the sea bed.

The platform jacket consists of the legs that rest on the sea bed and upon which the platform deck is installed. During the jacket's installation, it toppled and sank. It was recovered, repaired, and installed at the off-shore site. The cost of repair was covered by an insurance policy purchased by AGIP, under which it was a principal insured and the Contractors were other insureds.

The policy is a hybrid of a builder's risk policy (Section I) and a comprehensive general liability policy (Section II). Restated, it provided two types of coverage. As noted, Section I provided the builder's risk coverage; it is entitled "PHYSICAL DAMAGE". Section II, entitled "THIRD PARTY LIABILITIES ETC.", provided the comprehensive general liability coverage.

Section I ("PHYSICAL DAMAGE") insured "against all risks of physical loss and/or damage to the property covered hereunder,

3

except as hereinafter mentioned". The insured property included "the works executed in the performance of all contracts relating to this entire project ... and all materials, components, ... or any other property destined to become a part of the completed project...." Excluded from coverage under Section I was "[l]oss of use or delay in 'start-up' of the insured property however caused".

Accordingly, pursuant to Section I, Agip could (and did) recover from the insurer for the structural damage to the platform but not for loss of use due to the production-delay resulting from the platform's sinking. As a result, two actions were filed.

In the first action, Agip sued the Contractors for claimed damages sustained because of the loss of use of the platform. Again, these were damages Agip could not recover under Section I. According to Agip, because of the production-delay, it lost the ability to produce substantial amounts of gas and oil. In the second action, the policy Underwriters, in Agip's name, brought a subrogation claim against the Contractors, seeking to recover the substantial amount the Underwriters paid Agip under Section I for the structural damage. The two actions were consolidated. The Underwriters and Contractors filed cross motions for summary judgment on whether, under policy Section II ("THIRD PARTY LIABILITIES, ETC."), the Underwriters were obligated to indemnify, and provide a defense to, the Contractors against Agip's loss of use action.

Section II provides coverage where

4

the Assured shall become liable (under Contract or otherwise) to pay ... any sum ... in respect of any ... claim ... arising from ... the Assured's operations in connection with the Project, that is to say:

Loss of life, personal injury or illness....

Loss of or damage to *or loss of use of property of any kind or description*, including all other direct or indirect or consequential loss resulting from loss of or damage to the property....

(Emphasis added.)

Section II contains the following cross liability clause. The first paragraph of the clause reads:

In the event of one Assured incurring liability to any other of the Assureds, this insurance shall cover the Assured against whom claim is ... made in the same manner as if separate policies had been issued to each Assured. However, the inclusion of more than one Assured hereunder shall not operate to increase the limit of liability herein.

The second paragraph of the clause, — the linchpin for this appeal — reads, however:

In no case shall this Section II provide coverage for any physical loss and/or damage to or defect discovered in the property insured.

As discussed *infra*, it is this second paragraph that precludes coverage for the Contractors.

Summary judgment was awarded the Underwriters. The district court concluded the policy provided no coverage for the Contractors, reasoning that, if coverage were provided, "Agip would

5

be recovering in a circular fashion from its insurer for excluded risks [loss of use]". *Agip Petroleum Co., Inc. v. Gulf Island Fabrication, Inc., et al.,* No. H-94-3382, at 2 (S.D. Tex. 4 Dec. 1997) (*Agip-USDC*). Furthermore, according to the district court, when the policy is read as a whole in conjunction with Agip's choice to retain the risk of loss of use, rather than insure against such risk, no coverage exists. The district court reasoned that, if coverage existed under the policy, "the underwriters would be paying twice the coverage they underwrote when insuring the platform". *Agip-USDC*, at 3.

The district court based its ruling on, *inter alia*, Agip's not being a third party to the policy so as to trigger the provisions of Section II. In addition, it concluded that, even if Agip were a third party, "Agip's claims against the contractors are for the losses to the insured property — the platform. No coverage attaches to third-parties for property damage, even under the contractors' reading of section two for damage to the platform". *Agip-USDC*, at 6.

## II.

The Contractors appealed the no-coverage ruling; Agip appealed the rulings on its claims against the Contractors, but that appeal is stayed pending settlement; and the Underwriters did not appeal the summary judgment awarded the Contractors in regard to the subrogation claim. Therefore, the only issue is whether coverage

6

exists under Section II for Agip's loss of use claim against the Contractors.

A summary judgment is reviewed *de novo*, applying the identical standard used by the district court. *E.g., **Stewart v. Murphy***, 174 F.3d 530, 533 (5th Cir.), *cert. denied*, 528 U.S. 906 (1999). Such judgment should be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law". FED. R. CIV. P. 56(c). For this process, we "view the pleadings and summary judgment evidence in the light most favorable to the nonmovant". **Stewart**, 174 F.3d at 533.

Because Section I expressly excludes coverage for loss of use, Section II is the only possible basis for coverage. Even though Section II covers third party liability, the Contractors assert that, pursuant to the cross liability clause, coverage exists under Section II where, as here, one insured sues another insured. The Contractors concede, however, that, whether any coverage exists against Agip's loss of use claim is dependent upon the exclusion contained in the cross liability clause.

The Underwriters advance numerous bases for no coverage. It is only necessary to address their assertion that, under Texas law, the cross liability clause's exclusion "for any physical loss

and/or damage to ... the property insured" excludes coverage for loss of use.

## A.

The parties agree that Texas law governs by virtue of the forum selection clause in policy Endorsement 10. "A federal court is required to follow the choice of law rules of the state in which it sits." *Resolution Trust Corp. v. Northpark Joint Venture*, 958 F.2d 1313, 1318 (5th Cir. 1992) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)), *cert. denied*, 506 U.S. 1048 (1993); *see, e.g., St. Paul Mercury Ins. Co. v. Lexington Ins. Co.*, 78 F.3d 202, 205 (5th Cir. 1996). Under Texas choice of law rules, parties to a contract may select the law that governs their agreement. *Exxon Corp. v. Burglin*, 4 F.3d 1294, 1298 (5th Cir. 1993).

"A Texas court will enforce a contractual choice of law provision unless (1) the contract bears no reasonable relation to the chosen state or (2) the law of the chosen state violates a fundamental public policy of Texas." *Id.* at 1298 n.5; *see DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 677 (Tex. 1990), *cert. denied*, 498 U.S. 1048 (1991). The parties agree to the application of Texas law. Accordingly, neither maintains application of such law would violate Texas public policy. Furthermore, Texas law bears a reasonable relation to the policy; Agip, the primary insured, and

8

Sedgwick James of Texas, Inc., the insurance broker, were located in Texas.

In sum, Texas law governs. Accordingly, the burden rests upon the insurer to prove "the applicability of any exclusions in the policy". *Guar. Nat'l Ins. Co. v. Vic Mfg. Co.*, 143 F.3d 192, 193 (5th Cir. 1998) (citing *Telepak v. United Servs. Auto. Ass'n*, 887 S.W.2d 506, 507 (Tex. App. — San Antonio 1994, writ denied)); *see Sink v. Progressive County Mut. Ins. Co.*, 47 S.W.3d 715, 718 (Tex. App. — Texarkana 2001); TEX. INS. CODE ANN. § 21.58(b)(Vernon Supp. 2001) ("insurer has the burden of proof as to any avoidance or affirmative defense that must be affirmatively pleaded under the Texas Rules of Civil Procedure. Any language of exclusion in the policy ... constitutes an avoidance or an affirmative defense").

### B.

That there is no coverage for the Contractors against the loss of use claim seems clear from the plain wording of the policy. Texas law bears this out.

### 1.

The part of Section I (¶ 8), providing coverage for damage to the property, and the part of Section II (¶ 41), excluding cross liability coverage for damage to the property, both use essentially the same wording. Section I speaks of "physical loss and/or damage to the property covered hereunder, except as hereinafter mentioned"; Section II, of "physical loss and/or damage to ... the

9

property insured". Therefore, arguably, loss of use would be covered by the above quoted language in Section I, except for its being expressly excluded later in that section (¶ 28.1.(c)).

In short, Section I speaks of coverage for physical damage, but makes some exceptions, including for loss of use; Section II speaks of no cross-liability for physical damage, and makes *no* exceptions. As quoted *supra*, loss of use is covered pursuant to the general coverage provision in Section II (¶ 40); but no authority need be cited for a specific provision's (cross liability, ¶ 41) controlling a general one (coverage, ¶ 40).

In sum, the cross liability provision precludes coverage for "physical loss and/or damage to ... the property insured". No more need be said. It was not necessary for the policy to go into greater detail and say: "there is no cross liability for physical loss and/or damage to the property insured; this exclusion means that, among other possible exclusions, there is no cross liability for loss of use arising out of physical loss and/or damage to the property insured". As discussed below, this plain reading comports with Texas law.

2.

In maintaining that, under Texas law, the exclusion for "physical loss and/or damage" includes excluding coverage for loss of use, the Underwriters principally rely upon ***Employers Cas. Co. v. Brown-McKee, Inc.***, 430 S.W.2d 21 (Tex. Civ. App. — Tyler 1968,

10

writ ref'd. n.r.e.). Brown-McKee contracted with Panhandle Wheat Growers, Inc., to construct a grain elevator for it. Brown-McKee was insured by Employers. After completion of the work, Panhandle sued Brown-McKee, alleging: defects in the elevator allowed water to enter and damage another's stored grain; and, as a result, the grain was removed from the elevator and Panhandle therefore lost revenue. In turn, Brown-McKee sued Employers, because Employers claimed that, under a policy exclusion, it had no duty to provide a defense.

Under the policy, Employers agreed to defend Brown-McKee against any suit that fell within the policy coverage — "injury to or destruction of property, *including the loss of use thereof*, caused by accident". *Id.* at 23 (emphasis added; internal quotation omitted). The policy, however, contained the following exclusion:

> This policy does not apply:
>
> ...
>
> ... under [the above quoted provision] to injury to ... (4) any ... work completed by or for the named insured, out of which the accident arises.

*Id.* Employers maintained that this clause excluded coverage for Panhandle's loss of use claim. Brown-McKee countered that Panhandle's claim arose not from damage to the completed work but instead from damage to the grain in the elevator and the removal of the grain.

11

The court determined, however, that Panhandle's action was not for damage to the grain, but rather "for lost storage revenue, which, in effect, is for loss of the use of the elevator". *Id.* at 27. Most notably, for purposes of our analysis, the court held that "loss of use of the elevator is merely an element of damage to the elevator and coverage therefor is excluded under [the above quoted] Exclusion". *Id.* Accordingly, loss of use was held exempted from coverage, even though the term was not used in the exclusion.

Our court has recognized the *Brown-McKee* holding that loss of use is an element of property damage. *See Todd Shipyards Corp. v. Turbine Serv., Inc.*, 674 F.2d 401, 422-23 & n.16 (5th Cir.) (although expressing doubt that the result would be the same under Louisiana law), *cert. denied*, 459 U.S. 1036 (1982). This is also consistent with our court's observation that, in general, courts interpret "property damage to require (1) actual damage to tangible property or (2) the loss of use of property with tangible monetary value". *Snug Harbor, Ltd. v. Zurich Ins.*, 968 F.2d 538, 542 (5th Cir. 1992) (applying Texas law but citing to New York, Florida, and Wisconsin law for this statement).

*Brown-McKee* is clear: where an exclusion denies coverage for damage to property, that exclusion forecloses coverage for loss of use of that property. Furthermore, *Brown-McKee* is factually on point. There, the policy covered loss of use to property that was

12

not part of Brown-McKee's construction project. Here, the policy provides coverage to the Contractors for loss of use of property that is not part of the platform construction project. In *Brown-McKee*, the policy excluded coverage for "injury to or destruction of" the property constructed by Brown-McKee. Here, where one insured sues another, excluded from coverage is "physical loss and/or damage to" the insured property — in this case, the platform jacket.

The policy at issue in *Brown-McKee* was a comprehensive general liability (CGL) policy, whereas the policy here is termed by the parties as a builder's risk policy. This difference, however, does not affect the applicability of *Brown-McKee*. A builder's risk policy is typically purchased by the party owning a property interest in the construction work to be performed in order to protect the property during construction. *See Data Specialties, Inc. v. Transcon. Ins. Co.*, 125 F.3d 909, 914 (5th Cir. 1997) (applying Texas law and observing that a builder's risk insurance policy "reimburses the owner, or any party with an insurable interest such as a mortgage holder, for the accidental loss, damage, or destruction of the property"). A CGL policy, on the other hand, can be purchased by the party performing the construction work, as was the situation in *Brown-McKee*, to broadly cover against tort liability incurred during construction. *See id.* ("CGL policy covers the contractor for its tort liability").

13

As stated *supra*, the policy in question is really a hybrid of a builder's risk policy and a CGL policy. Section I performs the function of builder's risk by insuring Agip's interest in the jacket against loss or damage. Section II is more akin to a CGL policy, as it protects Agip and the Contractors from tort liability to third parties. Accordingly, for our purposes, there is no functional difference between the CGL policy in **Brown-McKee** and the coverage in Section II.

There is a difference, however, in the relationship of the parties in **Brown-McKee** and here. In **Brown-McKee**, the party that owned the elevator and suffered the loss of use damages, Panhandle, was not an insured under the policy and had nothing to do with its purchase. Here, the owner of the jacket, Agip, purchased the policy and is an insured under it. If there is no coverage under **Brown-McKee** for a loss of use claim brought by a stranger to the policy, it makes even more sense that, pursuant to the plain wording of the policy at issue, there be no coverage when the party claiming loss of use is the purchaser of, and a party to, the policy. Again, Agip decided not to insure against loss of use under Section I.

Therefore, under the **Brown-McKee** holding, Section II's cross liability clause exclusion for physical loss and/or damage to the jacket also excludes coverage for loss of use of that jacket. The

14

Contractors present two reasons why **Brown-McKee** should not dictate the outcome here.

First, they seize upon language in the **Brown-McKee** exclusion, which prohibited coverage for "work completed by or for the named insured, *out of which the accident arises*". **Brown-McKee**, 430 S.W.2d at 23 (emphasis added). According to the Contractors, this language distinguishes **Brown-McKee** from the situation at hand. The **Brown-McKee** court, however, did not rely upon this language. Furthermore, here, Section II requires that, for coverage to exist, the damage must result from "the Assured's operations in connection with the Project" ("Coverage", ¶ 40). This forecloses coverage pursuant to the cross liability clause for property damage not in connection with the Contractors' role in the project. Instead of distinguishing **Brown-McKee**, this language further demonstrates the similarities between the policies at issue there and here.

The Contractors' second assertion fares no better. According to them, and discussed *supra*, because damages for loss of use are expressly excluded from Section I coverage (¶¶ 8 & 28.1.(c)) but expressly included in Section II coverage (¶ 40), the complete absence of such exclusionary language from the subsequent Section II cross liability exclusion (¶ 41) demonstrates no intent to exclude coverage for loss of use. Under this theory, however, it would be just as reasonable to conclude that, because of such silence in the cross liability clause, loss of use is excluded. In

15

any event, and as discussed *supra*, the plain meaning of the policy certainly does not support this contention.

Moreover, the Contractors cite no authority for this position. Under Texas law, as we have concluded, an exclusion for property damage subsumes loss of use. Because the policy included the loss of use term in two instances but not in another does not change the meaning, under Texas law, of property damage. In addition, failure to so include this language does not create an ambiguity in the policy where, under Texas law, there is only one reasonable interpretation of the scope of the exclusion. *See* **Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.**, 940 S.W.2d 587, 589 (Tex. 1996) ("A contract is not ambiguous if it can be given a definite or certain meaning as a matter of law.").

## III.

As the district court correctly observed, were we to hold that Agip's loss of use claim was not an element of property damage, Agip and the Contractors would receive coverage for which the parties to the policy never negotiated. To say the least, it would be contrary to reason for Agip to recover from the Underwriters, indirectly through the Contractors, what Agip could not recover directly from the Underwriters. Texas law avoids such a result.

**AFFIRMED**

16